IMBODEN, Appellant, v. ST. LOUIS UNION TRUST COMPANY, Executor, Respondent.

St. Louis Court of Appeals, February 21, 1905.

1. MARRIAGE: Common Law: Proof of Contract.   Marriage in this State is a civil contract and when it is not entered into under a license as provided by statute, nor solemnized according to the rites of any religious denomination, the contract must be proven like any other contract.

2. ———: ———: Witness.   Where one party to a verbal marriage contract is dead, the other party is not a competent witness to prove the contract.

3. WITNESS: Waiver of Incompetency.   A stipulation was entered into that the deposition of a witness, incompetent under the statute, might be read in evidence subject to objections as

to "competency, relevancy and materiality" of any of the testimony; the deposition was offered under the stipulation and read in evidence without objection, on a trial of the case in the probate court. *Held*, objection to the competency of the witness was waived and could not be recalled on a trial of the case in a circuit court to which it was appealed.

4. ———: **Statement of What excluded Witness is Expected to Testify.** It is error to refuse to permit counsel to state what a witness, who is excluded as incompetent, is expected to testify to, so that the appellate court may determine whether or not the excluded evidence is admissible.

5. **MARRIAGE: Common Law: Evidence of Contract: Repute.** A strong presumption of marriage arises from cohabitation and repute during the lives of the persons whose marital relation is in dispute.

6. ———: ———: ———: **Declarations.** In a proceeding by an alleged widow in the probate court for an allowance of dower, it was shown that the deceased had lived with her at various times as her husband, and she offered evidence of a verbal contract of marriage and direct declarations of the deceased that they were married, that he furnished groceries for her family and gave her money and traveled about the country with her, but the marriage was kept a secret and gained no reputation among their acquaintances; it was competent to show in defense that the deceased had made declarations both oral and written that he was single and unmarried.

7. ———: ———: ———: **Reputation.** But it was not competent to show that the deceased during the time passed as unmarried among his friends, for the reason that his relation to the plaintiff had no reputation of its own.

8. ———: ———: ———: **Conduct.** Nor was it competent to show that the deceased during the time took other women to theatres and other places of resort and wrote them letters, as a single man might do.

9. ———: ———: **Mental Reservation: Estoppel.** Where a party to a marriage contract entered into it in good faith believing she was becoming the wife of the other party, it cannot be claimed in defense of an action brought by her, where the marriage is in question that the alleged husband did not mean to marry her or that there was no mutual agreement to that effect.

10. **PRACTICE: Instruction: Misleading Jury.** An instruction which was likely to confuse the minds of the jury, so that they would not be likely to distinguish between the fact to be proven and the evidence to prove it was erroneous.

Imboden v. Trust Co.

11. ———: ———: Singling Out Evidence. · Instructions which state correct propositions of law in themselves, but which divide the evidence into parts so that the jury may be led not to consider the evidence as a whole, are erroneous.

12. ———: ———: ———. An instruction which singles out part of plaintiff's evidence and instructs the jury that such evidence does not make out a case, is erroneous.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED.

*Joseph Wheless, W. W. Henderson* and *Adiel Sherwood* for appellant.

(1) Petitioner was a competent witness in her own behalf. Petitioner was offered as a witness on the trial to prove her *status* and the fact of her marriage with Mr. Imboden; and was excluded by the court. Under the statute to show the marriage, petitioner is a competent witness to prove the fact of her marriage with deceased. Marriage is a *status.* Marriage itself, and a proceeding to establish or annul it, is a proceeding *in rem.* It is in this sense a matter *dehors* the statute, not covered by its intention. Ellison v. Martin, 53 Mo. 578; 1 Bishop, Marriage and Divorce, section 11, n-2; McClurg v. Terry, 21 N. J. Eq. 225. In action to establish the marriage the survivor is a competent witness though its purpose is to secure a share of the estate. Green v. Green, 126 Mo. 17, 28 S. W. 752, 1008; Ashford v. Ins. Co., 80 Mo. App. 638; Meier v. Thieman, 90 Mo. 442, 2 S. W. 435; Garvin's Admr. v. Williams, 50 Mo. 206; Spradling v. Conway, 51 Mo. 51; Berry v. Hartzell, 91 Mo. 135, 3 S. W. 582; Hoyt v. Davis, 30 Mo. App. 309; Brandon v. Dawson, 51 Mo. App. 237; Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 885; Drinkhouse's Estate, 151 Pa. St. 294; Smith v. Smith, 52 N. J. L. 207; Greenawalt v. McEnelley, 85 Pa. St. 352; Ingersol v. McWillie, 9 Texas Civ. App. 543; Lorimer v. Lorimer (Mich.), 83 N. W. Rep.

609; Commonwealth v. Dill, 156 Mass. 226; Commonwealth v. Hayden, 163 Mass. 453 (47 Am. St. Rep. 468); Bailey v. State, 36 Neb. 808; Bissell v. Bissell, 55 Barb. (N. Y.) 325; Van Tuyl v. Van Tuyl, 57 Barb. 235; Christy v. Clark, 45 Barb. 529. (a) Because her incompetency, if it existed, was waived by the stipulation permitting petitioner to testify. Pending the trial of the proceeding in the probate court, depositions of witnesses on behalf of petitioner were taken, and were filed and used in the probate court, and partly in the circuit court. Adair v. Mette, 156 Mo. 507, 57 S. W. 551; In re Est. of Soulard, 141 Mo. 655, 43 S. W. 617. (b) Because of the waiver of incompetency, if it existed, by cross-examination. Upon petitioner testifying to certain facts in her deposition, counsel for defendant entered into a course of cross-examination entirely beyond the scope of the examination in chief, and developed every detail of her marriage and relations with deceased. Hume v. Hopkins, 140 Mo. 75, 41 S. W. 784; Hickman v. Green, 123 Mo. 165, 22 S. W. 455, 27 S. W. 440; Carney v. Carney, 95 Mo. 358, 8 S. W. 729; Ess v. Griffith, 139 Mo. 322, 40 S. W. 930; Borgess Inv. Co. v. Vette, 142 Mo. 560, 44 S. W. 754; Rice v. Waddill, 168 Mo. 119, 67 S. W. 605; Nichols v. Nichols, 147 Mo. 403, 48 S. W. 947. (c) Because her incompetency, if it existed, was waived by filing and using deposition in the probate court. Tierney v. Hannon, 81 Mo. App. 488. (2) The court erred in refusing counsel for petitioner the opportunity to state the substance of the evidence in the absence of the jury, which it was expected would be proved by petitioner. Abbott's Trial Brief, pp. 288-231; Best v. Hoeffner, 39 Mo. App. 682; Jackson v. Hardin, 83 Mo. 175; McCrew v. Railroad, 109 Mo. 582, 19 S. W. 53; Ruschenberg v. Railway, 161 Mo. 70, 61 S. W. 626; In re Bischoff & Stumpf, 10 Mo. App. 474; Reynolds v. Reynolds, 45 Mo. App. 622. (3) The court erred in admitting testimony to show that the reputation of Mr. Imboden was that of a single and unmarried man. The reputation of

the parties, whether married or unmarried, could not be an issue in the case—petitioner did not base her claim to marriage on repute, but on a contract with admissions of deceased and the sole purpose of this evidence was to disprove the marriage. Badger v. Badger, 88 N. Y. 554-6; Gall v. Gall, 114 N. Y. 119; Northrop v. Knowles, 52 Conn. 522; Bartlett v. Musliner, 28 Hun (N. Y.) 235; Henderson v. Cargill, 31 Miss. 417; Nathan's Case, 2 Brewster (Pa.) 175. (4) The trial court committed error in admitting testimony (there were nineteen witnesses, seven of whom lived in Arkansas) to the effect that Mr. Imboden had stated to them in casual conversation from time to time during the past five years that he was unmarried, did not intend to marry again, etc., all of these statements were made in the absence of and without the knowledge of petitioner—nothing but loose and casual utterances. This evidence was inadmissible because: (a) Self-serving declarations by Imboden in his own favor; besides not made in the presence of petitioner and hearsay. Wilson v. Woodruff, 5 Mo. 40; Mulliken v. Greer, 5 Mo. 489; McLean v. Rutherford, 8 Mo. 109; Perry v. Roberts, 17 Mo. 36; McCune v. McCune, 29 Mo. 117; Salmons v. Davis, 29 Mo. 176; State v. Levy, 168 Mo. 521, 68 S. W. 562; Gentry v. Field, 143 Mo. 411, 45 S. W. 286; Bank v. Durrill, 61 Mo. App. 59; Sherlock v. Kimmell, 75 Mo. 77; Blancjour v. Tutt, 32 Mo. 576; Walker v. Ins. Co., 62 Mo. App. 209; Dean v. Carpet Co., 13 Mo. App. 179; Hammond v. Beesom, 112 Mo. 201, 20 S. W. 474; Courtney v. Blackwell, 150 Mo. 247, 51 S. W. 668; State v. Pruett, 141 Mo. 92; Roe v. Bank, 167 Mo. 423, 67 S. W. 303; Baldwin v. Boulware, 79 Mo. App. 11; Wilson v. Hempstead, 73 Mo. App. 667; Vermillion v. LeClare, 89 Mo. App. 59; Blount v. Hamey, 43 Mo. App. 644; Melchor v. Derkum, 44 Mo. App. 650. (b) Because such declarations can not affect the marriage status or disprove the fact of marriage. Hill v. Hill's Admr., 32 Pa. St. 511; Badger v. Badger, 32 Pa. St. 511; In re Moore's Estate, 9 Pa. Co.

Ct. Reps. 338; Gaines v. Relf, 12 How. (53 U. S.) 534. (5) The gratuitous interlineation by the court of the words "with the mutual intention of becoming husband and wife," which destroyed petitioner's requested instruction and vitiated the instruction substituted for it by the court is not the law. The secret intention or "mental reservation" of one of the parties, not known to the other, cannot affect the validity or bona fides of a marriage entered into by formal words of the present tense, accepted and uttered in good faith by the other party. Barnett v. Kimmell, 35 Pa. St. 13; McAdam v. Walker, 1 Dow's Reps. 190; Farley v. Farley, 94 Ala. 501; Jackson v. Winne, 7 Wendell 47; Ferlet v. Gojon (N. Y.), 14 Am. Dec. 554; Smith v. Smith, 43 La. Ann. 1148-9; Gaines v. Hennen, 65 U. S. 594; 19 Am. and Eng. Enc. Law, p. 1210, and cases cited; 1 Bishop, Marriage & Divorce, Sec. 334. (6) That this agreement of secrecy did not prejudice the marriage as a legal act, or as a matter of fact, the court was asked to declare in an instruction offered by petitioner, which the court refused. 1 Bishop, Marriage & Divorce, sec. 351; Dalrymple v. Dalrymple, 2 Hag. Con. 54-76; Swift v. Kelly, 3 Knapp 257; Hamilton v. Hamilton, 9 Cl. & F. 327; Sharon v. Sharon, 75 Cal. 1; Ayl. Parer., 364; Shorten v. Judd, 60 Kas. 73; Brooke v. Brooke, 60 Md. 524; Hulett v. Carey, 66 Minn. 327; State to use v. Baldwin, 112 U. S. 490.

*John D. Dalton* and *A. H. Roudebush* for respondent; *James C. Jones* of counsel.

(1) The court did not err in excluding petitioner as a witness in her own behalf. She was incompetent under the statute and the decisions. R. S. Mo. 1899, sec. 4652; 5 Am. & Eng. Ency. Law (2d Ed.), 776; Stanton v. Ryan, 41 Mo. 510; Johnson v. Quarles, 46 Mo. 423; Poe v. Domic, 54 Mo. 124; Kellog v. Malin, 62 Mo. 429;

Weiland v. Weiland, 64 Mo. 168; Sitton v. Shipp, 65 Mo. 297; Wade v. Hardy, 75 Mo. 400; Ess v. Griffith, 139 Mo. 329, 40 S. W. 930; Kaho v. Kind, Admr., 19 Mo. App. 44; Callahan v. Riggins, Admr., 34 Mo. App. 136; Lins v. Lenhardt, 127 Mo. 271, 29 S. W. 1025; Curd v. Brown, 148 Mo. 82, 49 S. W. 990; Lyons v. Lyons, 74 S. W. 467; Shorten v. Judd, 56 Kan. 43; Denison v. Denison, 35 Md. 361; Sorensen v. Sorensen, 56 Neb. 729. (2) The court did not err in admitting testimony tending to prove that the reputation of deceased was that of a single and unmarried man. White v. White, 82 Cal. 427; Barnum v. Barnum, 42 Md. 297; Jackson v. Jackson, 34 L. R. A. 776; Camberlain v. Chamberlain, 71 N. Y. 423; Kelly's Heirs v. McGuire et al., 15 Ark. 535; Davis v. Brown, 1 Redfield 259; Powers v. Charmbury, 35 La. Ann. 630; Boone v. Purnell, 28 Md. 607. (3) The court did not err in admitting oral or written declarations of the decedent tending to disprove marriage to the appellant, as such evidence was proper under well established exceptions to the rule of hearsay evidence and to rebut similar evidence offered by the petitioner. In re Physick's Estate, 2 Brewster (Pa.) 179; Crawford v. Blackburn, 17 Md. 49; 19 Am. and Eng. Ency. Law (2 Ed.), 1205; Jewell v. Jewell, 1 How. (U. S.) 219; Fulkerson v. Holmes, 117 U. S. 397; Stackhouser v. Stotenbur, 22 N. Y. App. Div. 312; Laurence v. Laurence, 164 Ill. 367; Smith v. Brown, 8 Kans. 608; Cope's Admr's v. Pearce, 7 Gill (Md.) 263; 1 Greenleaf Ev. (15th Ed.), sec. 108; In re Taylor, 9 Paige 611. (4) The law requires a meeting of the minds in contracts of marriage and the court did not err in giving instruction III. 19 Am. and Eng. Ency. Law (2nd Ed.), 1180 et seq.; Van Tuyl v. Van Tuyl, 57 Bart. (N. Y.) loc. cit. 241. (5) The law raises no presumption of marriage unless there is proof of living together as husband and wife and of a general reputation of being such, and the court did not err in rejecting petitioner's instruction 17. Yardley's Estate, 75 Penn. St. 211; Cargile v. Wood, 63 Mo. 512; Ashford v. Insurance Co., 80

Mo. App. 644; Sharon v. Sharon, 79 Cal. 669; 1 Bishop, Mar. and Div., sec. 777. (6) To constitute marriage at common law it is not sufficient for the parties to agree to present cohabitation and a future regular marriage, and petitioner's instruction 15 was properly rejected. McKenna v. McKenna, 180 Ill. 577; Robertson v. State, 42 Me. 509; Duncan v. Duncan, 10 Ohio St. 182; Beverson v. Beverson, 47 Cal. 62.

### STATEMENT.

On the fifteenth day of June, 1903, Luther E. Imboden died in the city of St. Louis testate. By his will he left all his property in trust to Eleleka Imboden, his daughter and only child by a former marriage. The appellant, as soon as the will was probated, claiming to be the wife and widow of Imboden, commenced proceedings in the probate court to establish her status and right as the wife and lawful widow of Imboden, by petition for an allowance under the statutes for the sum of five hundred dollars in lieu of provisions, not on hand at the time of the death of Imboden. The executor of the will, the St. Louis Union Trust Company, resisted the allowance on the ground that the appellant was not the wife and lawful widow of the deceased. Her claim was disallowed by the probate court and she appealed to the circuit court where, on a trial *de novo,* to a jury the verdict was against her. After an unavailing motion for new trial, she perfected her appeal to this court.

Her evidence shows that Imboden's former wife died in December, 1896, leaving an only child, a daughter, then about twelve years of age and that Imboden promised his wife on her deathbed that he would not bring a step-mother into his family to rule over their daughter; that he would not marry again until after his daughter should marry. Appellant's maiden name was Pierce and she and her family, consisting of herself and her father and mother, were neighbors of the Imbodens.

In .1898 Miss Pierce gave Eleleka some instruction in elocution and through the daughter Imboden was intro- duced to Miss Pierce in the month of April, 1898. From that time on Imboden, sometimes accompanied by his daughter, but oftener alone, called on Miss Pierce at her home. These calls continued through the months of April, May, June and July. About June he began to speak to the mother of Miss Pierce about being in love with her daughter and of his wish to marry her and of the promise he was under to his wife and of his desire for this reason to marry her daughter with the least possi- ble publicity on account of the promise he had made to his former wife. Toward the latter part of July he stat- ed to Mrs. Pierce that he was going away and that he would "like to leave a little wife behind and would like to provide for her." At this time Miss Pierce was in delicate health. Prior to this he had on. several occas- ions spoken to Mrs Pierce of secret marriage and asked her what she thought of him and Lillie forming a secret marriage, and on the afternoon of July 27th, 1898, Mrs. Pierce testified that Imboden called her into the parlor of her dwelling and said to her: "Well, Lillie and I have come to the conclusion we will enter into a marriage con- tract. We have mutually agreed that we will enter into a marriage contract; have you any objection?" That she answered: "I don't know, it is not  what I would like." Then he replied: "It is out of the question; I could not make the marriage public at this time; but Lillie and I have come to the conclusion we will .enter into a mar- riage contract; from this time forth we will be husband and wife; have we your consent?" That she said: "Well, I could not very well say anything else; both of you are of legal age; you are not school children. Lillie knows her own mind and I think you ought to know yours." He said: "It has got to be kept a secret until such time as I can reveal it." She further testified that they were stand- ing in the parlor at the time, Imboden with her (Miss Pierce's) hand in his and she said to him, "Will you

make it public?" He replied: "Well, I can't. Have I your consent?" and she said, "I will give you my consent upon these conditions: as a man of honor that you will rectify this in public," and he said, "Well, I will when I can." While they were standing there at this same time, with Lillie's hand in his, Imboden said to Lillie, "I take you as my wife," and she said, "I take you as my husband." Afterwards he gave Lillie a ring and said to witness: "You see this ring; that makes her my wife." A few days afterwards, and after spending the night with Lillie and taking breakfast with the family, Sargent Pierce, father of Lillie, testified Imboden said to him that he "was about going away and wanted to inform him that he had married his daughter Lillie and that she was his wife and that they had entered into a contract and would keep it secret until after his daughter was married," and that Imboden on several occasions afterwards, once as late as June preceding his death, talked about making his marriage public and as soon as his daughter was married to Dr. Parrish, to whom it seems she was then engaged, he would make his marriage to Lillie public. Plaintiff's evidence further shows that Imboden stated to several persons that he was married to Lillie Pierce and on divers occasions he was seen to kiss and address her as his little wife. They made a trip to French Lick Springs and there registered as man and wife, but under the name of Pierce; that when he was in the city he spent most of his nights at the Pierce residence, took his meals with the family and furnished most of the supplies for their table; that he furnished Lillie with money and clothing, and on numerous occasions he promised the mother of Lillie to make his marriage public as soon as his daughter married Dr. Parrish. There are other facts shown in evidence tending to corroborate the fact that a contract of marriage was entered into between Imboden and Lillie Pierce on July 27, 1898. There is much countervailing evidence found

in the record, to the admission of the greater part of which the appellant objected and excepted.

BLAND, P. J. (after stating the facts).—1. The first error assigned is the ruling of the court that the appellant was not a competent witness to prove the contract of marriage. It appears that pending the proceedings in the probate court depositions were taken and among them the deposition of the appellant. In respect to this deposition the parties entered into the following stipulation, as is shown by the appellant's abstract:

"It is stipulated and agreed by and between the parties hereto that the said deposition may be taken down, . . . . . and may be used and read as evidence in behalf of the petitioner in any proceeding pending in the probate court or circuit court of the city of St. Louis, or any other court in which proceedings in this matter may be brought and pending subject to all legal objections as to the competency, relevancy and materiality of any of said evidence or testimony by the parties."

When the appellant was offered as a witness, among other things the following occurred:

"Mr. Wheeles: Another point, which is worthy of serious consideration, is that this deposition (appellant's) was filed and used as evidence in this case in the probate court of this city. No objection was at that time made to the testimony to the competency of this witness or any other objection to her testimony. Certainly that is a waiver.

"The Court: It is a trial de novo in this court. To which ruling of the court petitioner then and there duly excepted."

The substance of the deposition of appellant is set forth in her abstract but it was not read or offered in evidence and for this reason cannot be considered or taken notice of on this appeal. The status appellant sought to establish, if it existed, was based upon and arose out of the contract of marriage, therefore the vital issue in the

case is, whether or not Imboden, the deceased, and the petitioner did enter into a contract of marriage. Marriage in this State is a civil contract by one man and one woman competent to contract, whereby they are mutually bound to each other so long as they both shall live for the discharge to each other and to the public of the duties and obligations which by the law flow from said contract. Banks v. Galbraith, 149 Mo. l. c. 536, 51 S. W. 105; State v. Bittick, 103 Mo. 183, 15 S. W. 325; Dyer v. Brannock, 66 Mo. 391. And when not entered into under a license as provided by statute in relation thereto, nor solemnized according to the rites of any religious denomination or order and made a matter of public or church record, the contract is to be proven like any other contract; if in writing, by the writing; if not in writing, then by verbal testimony. What the petitioner sought to establish was a verbal contract of marriage, a common-law marriage, a simple civil contract, which she claims she entered into with Imboden. Now Imboden being dead, it seems to me she is not a competent witness to prove the contract itself. R. S. 1899, sec. 4652; Lins v. Lenhardt, 127 Mo. 271, 29 S. W. 1025; Curd v. Brown, 148 Mo. 82, 49 S. W. 990; Lyons v. Lyons, 101 Mo. App. 494, 74 S. W. 467.

A more difficult question is whether or not the respondent waived appellant's incompetency by the stipulation in respect to taking depositions in the case or waived it by not objecting to her testifying in the probate court, if she testified there without objection. The stipulation reserved the right to make objections to the competency, relevancy and immateriality of the evidence or any of said evidence or testimony by the parties. The persons whose depositions were to be taken under the stipulation were not named. Now the personal disqualification of a witness is not raised by general objection to his evidence as incompetent, irrelevant and immaterial. Adair v. Mette, 156 Mo. l. c. 507, 57 S. W. 551.

In In re Estate of Soulard, 141 Mo. l. c. 655, 43 S. W. 617, a contract alleged to have been made between Soulard, the deceased, and LaMotte, the witness, was in issue. The deposition of LaMotte, an incompetent witness, was taken before a notary public to prove the execution of the contract, subject to objections for incompetency, irrelevancy, or leading character of questions. Speaking of this stipulation, MACFARLANE, J., writing the opinion of the court, said: "It might well be questioned whether the incompetency of the witness was not waived by this stipulation. The reservation of the right to object is limited to the incompetency of the testimony of the witness and does not, under a fair construction of the stipulation, extend to the incompetency of the witness to testify." But this point was not expressly decided. The general rule is that the right to object to any witness as incompetent is waived unless the objection is taken at the first opportunity. Donelson v. Taylor, 8 Pick. (Mass.) 390; Patterson v. Wallace, 44 Pa. St. 88. An examination of the witness in chief or as to new matter on cross-examination is a waiver of the competency of a witness on the ground that having had the benefit of his testimony the party cannot afterwards object to the competency of the witness. Rapalje, Law of Witnesses, sec. 178; Rice v. Waddill, 168 Mo. 119, 67 S. W. 605; Borgess Inv. Co. v. Vette, 142 Mo. 560, 44 S. W. 754; Hume v. Hopkins, 140 Mo. 75, 41 S. W. 784; Hickman v. Green, 123 Mo. 165, 22 S. W. 455; Tierney v. Hannon's Ex'r, 81 Mo. App. l. c. 491. We think upon both reason and authority the question propounded in the Soulard case should be answered in the affirmative. It was stated by appellant's counsel in argument before the circuit court on the objection to the appellant's competency as a witness, that her deposition taken before the notary was read in evidence on the trial in the probate court without objection and that statement, as shown by the bill of exceptions itself, was not denied by the respondent's counsel. While

there is no evidence that the deposition was read in the probate court, the statement of appellant's counsel, that it was read, was not challenged and may be a true statement of fact; if so, the objection to her competency was waived by the respondent and being once waived cannot be recalled. Tierney v. Hannon's Ex'r, 81 Mo. App. 488.

As was said in Ess v. Griffith, 139 Mo. l. c. 331, 40 S. W. 930, "A waiver of objection to competency made at one stage of the taking of the testimony is a waiver during the whole progress of that proceeding," citing Rapalje on Witnesses, sec. 178; Weeks on Depositions, sec. 436; Weil v. Silverstone, 69 Ky. 700; Thomas v. Irwin, 90 Tenn. 512; In re Estate of Dunlap, 94 Mich. 17; Chouteau v. Thompson, 3 Ohio St. 424; Bair v. Frischkorn, 151 Pa. St. 466; 29 Am. and Eng. Ency. Law, 749.

2. Appellant's counsel offered to state what her testimony would be if she were permitted to testify. The court refused to hear the statement. This was error. When a witness is excluded as incompetent or his evidence is excluded for any reason, it is essential that the party complaining should state to the trial court what he expects to prove by the witness so that the appellate court may determine whether or not the excluded evidence is admissible; the ruling was prejudicial error. Jackson v. Hardon, 83 Mo. 175; Kraxberger v. Roiter, 91 Mo. l. c. 408, 3 S. W. 872; State ex rel. Allen v. Railroad, 116 Mo. l. c. 14, 22 S. W. 611; Berthold v. O'Hara, 121 Mo. l. c. 98, 25 S. W. 845; Robinson v. Siple, 129 Mo. 208, 31 S.W. 788; Ruschenberg v. Railroad, 161 Mo. 70, 61 S. W. 626; Schlicker v. Gordon, 19 Mo. App. l. c. 485; State v. Ragsdale, 39 Mo. App. 590; Efron v. Car Co., 59 Mo. App. 641; Wood v. Railway Co., 39 Mo. App. 64. Appellant having been a party to the making of the alleged contract of marriage, we are bound to presume her testimony was material, though not set out in the record, and if she was erroneously ex-

cluded as a witness the error is such as to call for a reversal of the judgment.

Over the objection of the appellant, the court permitted the respondent to show that Imboden was reputed among his friends, neighbors and acquaintances to be single and unmarried; that in the making of deeds and other documents executed by him after his alleged marriage to appellant, he described himself as single and unmarried and in his last will he described himself as unmarried, and that he made statements to divers witnesses, not in the hearing of the appellant, that he was an unmarried man and never expected to marry and that without the knowledge of appellant he wrote letters to other girls, escorted them to the theatres and made them presents and otherwise conducted himself toward them as an unmarried man.

It has been held in numerous civil cases that marriage may be shown by cohabitation and repute during the life of the very persons whose marital relations are in dispute or during the life of one of them. Boatmen v. Curry, 25 Mo. 433; Hammick v. Bronson, 5 Day 290; Pettingill v. McGregor, 12 N. H. 179; Young v. Foster, 14 N. H. 114; Graham v. Law, 6 U. C. C. P. 310; Arthur & Corprew v. Broadnax, 3 Ala. 557; Holmes v. Holmes, 26 Am. Dec. (6 La. 463) 482; Taylor v. Swett, 22 Am. Dec. 156; Chiles v. Drake, 74 Am. Dec. 406; Boone v. Purnell, 28 Md. 607. And it has been held that the presumption of marriage arising from cohabitation and repute can be overthrown only by the most cogent proof. Hynes v. McDermott, 91 N. Y. 451; Morris v. Davies, 5 Cl. & Finn. 163. In the last cases it is said: "The presumption of marriage from cohabitation, apparently not immoral, is one of the strongest presumptions known to the law. The law presumes morality, not immorality, marriage, not concubinage, legitimacy, not bastardy."

In prosecutions for bigamy, etc., the rule in most of the States is that the marriage must be proved by direct testimony and that something more than cohabita-

tion and repute is necessary. State v. St. John, 94 Mo.
App. 229, 68 S. W. 374. On the other hand, the authorities are unanimous that, if the cohabitation is meretricious in the beginning, the legal presumption is that it continues to be illicit, unless the presumption is overthrown by proof of a subsequent legal marriage. The evidence in the case conclusively shows that the appellant and Imboden occasionally cohabited with each other but did not live together under the same roof as a man and wife. Their cohabitation, being only semi-occasionally, was not that character of cohabitation which is known to exist between man and his wife, and it was not generally known among their neighbors, so far as the evidence shows, and their cohabitation seems not to have gained any reputation at all in respect to the relation they sustained to each other. Appellant, to show marriage, offered evidence of a verbal contract made and entered into between herself and Imboden on a day certain, to be consummated at the instant of the making of the contract. She also offered evidence as tending to prove declarations of Imboden that they were married, and that Imboden on various occasions slept in her house and occupied a room with her; that he furnished groceries for the family and frequently took his meals with the family and gave appellant money; that he took her to Hot Springs, Arkansas, and to French Lick Springs, Indiana, and at both places occupied the same room with her and introduced her as his wife. To rebut this evidence, the respondent offered evidence, over the objection of appellant, that Imboden, after the alleged contract of marriage and not in the presence of appellant, made oral and written declarations that he was single and unmarried, and also evidence tending to prove that he conducted himself toward certain other women and girls as a single man would, and that he passed among his old friends and associates as an unmarried man. The admission of this testimony is assigned as error.

In the Berkeley Peerage Case, 4 Camp. 415, Lord

MANSFIELD said: "From the necessity of the thing, the hearsay of the family as to these particular facts (marriage, birth and the like) is not excluded," if made before the dispute has arisen.

In Copies' Admr. v. Pearce, 7 Gill. 247, it is said: "The term 'pedigree,' embraces not only descent and relationship but also the facts of birth, marriage and deaths, and the times when these events happen," and that in case of pedigree, the declarations of the deceased persons and of deceased members of the family are admissible to prove *per se* not only the issue but the fact of marriage.

In Craufurd v. Blackburn, 77 Am Dec. (17 Md. 49) 323, the plaintiff, to obtain letters of adminstration on the will of Dr. David Craufurd, offered testimony to show that he was a son of Thos. B. Craufurd, deceased, who was a son of Dr. David Craufurd. The maiden name of the mother of plaintiff was Betsy Taylor. To prove that she was lawfully married to Thomas B. Craufurd, the appellant offered, with other evidence, the declarations of Thomas B. Craufurd, made on several occasions to the effect that Betsy Taylor was his wife; and also called his mother to the stand, who testified that she and Thomas B. Craufurd were married by a Catholic priest in the city of Washington, in 1835. To rebut this evidence, the appellee offered the declarations of Thomas B. Craufurd, made in the year 1837, and afterwards, that he was not married to Betsy Taylor. The circuit court admitted this evidence over the objections of the appellant. On appeal, in respect to this character of evidence, the court said:

"This objection arises from a misapprehension of the rule. Such declarations are not held to be admissible or inadmissible according to the necessity of the particular case; but they are admitted as primary evidence on such subjects by the established rule of law, which, though said to have had its origin in necessity, is universal in its application. Nor do such declarations

stand upon the footing of secondary evidence, to be excluded where a witness can be had who speaks upon the subject from his own knowledge. 'Hearsay evidence is of course inadmissible, if the person making the declaration is alive and can be called. But the declarations of a deceased mother, as to the time of the birth of her son, are admissible, though the father is living and not called.' " The ruling in this case was followed in Jones v. Jones, 36 Md. 457, and Barnum v. Barnum, 42 Md. 305.

In Jewell v. Jewell, 42 U. S. 219, it was held that the declarations of a deceased member of the family that the parents were never married were admissible in evidence and that an advertisement in a commercial paper, at the place of residence of the parties, inserted immediately after her separation was a part of the *res gestae* and admissible in evidence to rebut the evidence of marriage. The Jewell case was followed in Fulkerson v. Holmes, 117 U. S. 1. c. 397.

In Henderson v. Cargill, 31 Miss. 418, it is said: "The term, pedigree, embraces not only descent and relationship, but also the facts of birth, marriage and death; and it is sometimes said that general reputation is admissible to prove the fact of the marriage of the parties alluded to, even in cases where pedigree is not in question."

In Smith v. Brown, 8 Kan. 608, it was held: "Where the facts of relationship and descent, or of birth, marriage or death, are in controversy, evidence is properly admitted of what the witness heard members of the family, since deceased, say as to those facts."

In cases of pedigree, Greenleaf says: "It is now settled that the law resorts to hearsay evidence in cases of pedigree, upon the ground of the interest of the declarants in the person, from whom the descent is made out and their consequent interest in knowing the connections of the family." 1 Greenleaf on Evidence, (Lewis Ed.), sec. 103. In the succeeding section (104) he says: "The term, pedigree, however, embraces not only

descent and relationship, but also the facts of birth, marriage and death, and the times when these events happened."

The declarations of Imboden, both written and oral, made after the alleged marriage, that he was single and unmarried were admissible to rebut the testimony offered by appellant to prove the marriage. But I do not think the fact, that he passed as unmarried among his old friends, was admissible for the reason his relation with the appellant had no reputation of its own. They never cohabited together as man and wife, their intercourse was only occasional, not continuous and unbroken, as is the cohabitation of man and wife, and unless their cohabitation, such as it was, was known to his frends and associates, I cannot see that the fact that he passed among them as unmarried proves or tends to prove anything more than if he was married or was cohabiting with appellant, they were not aware of it. Gall v. Gall, 114 N. Y. 109. I also think that the testimony that Imboden took other women to theatres, restaurants and other places of resort and wrote them letters was incompetent, for these acts neither explained nor tended to explain or enlighten the jury in any respect whatever in regard to his relation to the appellant.

3. Of its own motion the court gave the following instructions:

"3. The court instructs the jury that marriage is a status created by contract, and in Missouri is considered in law as a civil contract, to which the consent of the parties capable in law of consenting is essential; and it is not necessary that the contract between the parties should be acknowledged before a minister of the gospel or any officer authorized by law, nor is the presence of a minister or officer necessary, nor is a license from the recorder of deeds necessary, nor to make the marriage valid and effective is any particular form of ceremony required; and if you believe from the evidence

that on July 27, 1898, Luther E. Imboden and Lillie Belle Pierce, with the mutual intention of becoming husband and wife, stood up in the parlor of her father's residence in the presence of her mother, and Mr. Imboden, after they had joined hands, said, 'I take this woman from this time to be my wife,' and Miss Pierce said, 'I take this man from this time to be my husband (or other words of similar import),' then you are instructed that the consent and agreement of said persons to become husband and wife constituted a lawful marriage between them, and your verdict should be for the plaintiff.

"4.   The court further instructs the jury that the agreement to keep a marriage secret does not invalidate it or necessarily involve in doubt the proofs of its existence, and that it is not necessary to the validity of a marriage that the man and woman should cohabit, that is, live together in the same house as husband and wife, nor is it necessary that they should inform their friends or the public that they have been married; and the court further instructs the jury that the fact of marriage, that is, the fact of consent of one man and one woman to enter into the relationship and become husband and wife may be proved by the testimony of persons who witnessed the statement and agreement of the man and woman at the time (if such testimony satisfies the jury of that fact of the marriage) ; or it may be proved by admissions of the parties to the alleged marriage, and by such other facts and circumstances with respect to the actions of the parties, their conduct toward each other and their treatment of each other, provided the jury are thereby satisfied of the fact of the marriage."

The appellant duly excepted to the giving of these instructions.

Appellant objected to the following phrase in instruction numbered 3, to-wit: "With the mutual intention of becoming husband and wife." The contention is

that by this phrase the jury was instructed in effect that if Imboden secretly intended not to marry the appellant or had a mental reservation or acted in bad faith (of which there is some evidence) the jury was authorized to find no marriage took place, though he made the contract as testified to by Mrs. Pierce. In view of the peculiar evidence in the case, I think this instruction is open to this objection. The intentions of the parties to an alleged contract of marriage or any other civil contract is to be gathered from what took place at the time it was entered into, not from the mental reservations or secret intentions of either of the parties. Barnett v. Kimmell, 35 Pa. St. 13. To destroy the meaning of the words used in making a contract and to show that the parties did not mean what they said and to believe they are other than husband and wife, it would be necessary to show that both parties intended and understood that they were not entering into the matrimonial relation. McCurd v. Terry, 21 N. J. Eq. 225. If appellant acted in good faith, believing that she was taking Imboden as her husband, and binding herself to him as his wife, Imboden could not avoid the marriage by a mental reservation, nor secret intention not to become the husband of the appellant. McAdam v. Walker, 1 Dawes 190; Farley v. Farley, 94 Ala. 501. Bishop says: "One who causes the other to participate in what marriage alone justifies, under pretense not incautiously believed, that he means marriage, is in fundamental justice estopped to set up his own fraudulent intent, in place of the one he held out to the other, who has acted thereon by doing what is in the highest degree injurious if there is no marriage." 1 Bishop, Marriage & Divorce, sec. 334. If appellant in good faith entered into the contract of marriage with Imboden, his heirs in a suit by her against his estate for the recovery of her interest in the property of the estate are estopped to set up that Imboden did not mean to marry the appellant or that there was not a mutual agreement between the

parties to become husband and wife, and I think the instruction should embrace this feature of the law of the case.

5. I think the fourth instruction correctly states the law of the case, but its phraseology is bad for the reason it seems to indicate that the court did not credit the testimony offered by the appellant.

6. Appellant complains of the following instructions given for the respondent:

"9. The court instructs the jury that the petitioner alleges and relies solely on the verbal contract of marriage entered into by petitioner and L. E. Imboden on July 27, 1898, in the presence of her mother, and unless it has been proven by a preponderance of the evidence that on or about that date it was agreed between petitioner and Imboden that petitioner should then become the wife of Imboden and that Imboden should become the husband of petitioner, your verdict must be for defendant.

"10. If the jury believe from the evidence that petitioner and L. E. Imboden had frequent intercourse with each other; that they took trips out of the city and registered at hotels as man and wife under assumed names; that he bought her clothes; paid her house rent, gave her money and called frequently to see her, and even slept at the house of her mother with her, that still does not constitute marriage; that though all these circumstances existed yet if there was no contract between the petitioner and Imboden on a certain date, that from and after that date they should be man and wife, then your verdict should be for the defendant.

"12. The court instructs the jury that cohabitation and repute of marriage do not constitute marriage. Proof of these circumstances are admitted in this case merely as corroborative circumstances of the alleged specific contract of marriage, which the petitioner claims took place on July 27, 1898."

As stated in instruction numbered 9, appellant did rely upon the verbal contract of marriage dated July 27, 1898, but she did not rely *solely* upon the evidence of what transpired at the time of the making of the contract to show that it was actually entered into, but upon other facts and circumstances that transpired afterwards and on admissions of Imboden that appellant was his wife as corroborative proof of the marriage contract. The instruction is so framed as to lead the jury to believe that in determining whether or not there was a marriage they were confined solely to what took place on July 27th and were not allowed to take into consideration the corroborative testimony and for this reason the instruction is misleading. Instruction numbered 10 segregated the evidence of what took place after the alleged contract of marriage and corroborative of the contract from the evidence showing the contract was entered into by telling the jury that the segregated facts are insufficient of themselves to show marriage. Both instructions (numbers nine and ten) when considered together, divide appellant's evidence into two parts and the jury was seemingly instructed that in determining whether or not there was a marriage it should not consider the evidence as a whole, but in parts, and if either half considered disjunctively did not satisfy it there was a marriage contract, then it could not find for the plaintiff. Both of these instructions state correct propositions of law, but to prevent the jury from being misled by them I think a clause should have been added to number ten informing the jury that the evidence of the facts therein recited should be considered by them as corroborative evidence of the alleged marriage contract.

The twelfth instruction is illogical and is out of place. A duly authenticated certificate of marriage granted by an officer of the State authorized to solemnize marriage does not constitute marriage but is the highest and best evidence of marriage; so cohabitation and repute of marriage do not constitute marriage but

they are strong presumptive evidence of the fact and it would be just as reasonable to instruct a jury that an official certificate of marriage does not constitute marriage as to instruct that cohabitation and repute do not constitute that relation. They are both evidence of marriage, the one documentary and conclusive, the other presumptive and subjected to be overthrown by rebuttal testimony. Plaintiff's case does not rest on cohabitation and repute of marriage for neither is shown by the evidence. There is not a syllable of evidence of a reputed marriage between plaintiff and Imboden and their cohabitation was not that cohabitation the law recognizes as raising a presumption of marriage. For these reasons instructions on presumption of marriage are not warranted by any evidence in the case.

The appellant alleged that she was married to Imboden July 27, 1898, and respondent denied this allegation. This was the sole controverted issue in the case and it seems to me that the law of the case can be covered by a few simple instructions. They should leave the jury free to draw their own conclusions from all the evidence considered as a whole and not in sections or by halves. Comments on the evidence and insinuations or intimations of the opinion of the court as to the weight of the evidence or the credibility of the witnesses have no place in instructions to a jury and should be studiously avoided.

For the errors herein noted the judgment is reversed and the cause remanded. *Nortoni, J.,* concurs; *Goode, J.,* not sitting.