## GREAT NORTHERN RY. CO. v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

No. 5130.

1. MARRIAGE ⊙⇒13—COMMON-LAW MARRIAGE—RECOGNITION.
   Minnesota recognizes common-law marriages.

2. MARRIAGE ⊙⇒3—WHAT LAW GOVERNS.
   Where a man sent a woman residing in Missouri a written contract, signed by him, stating that the parties would henceforth be husband and wife and so conduct themselves, the laws of Missouri, where the woman accepted the contractual offer, govern.

3. MARRIAGE ⊙⇒13—COMMON-LAW MARRIAGE—RECOGNITION.
   Missouri recognizes and enforces common-law marriages (Rev. St. Mo. 1909, § 8279); the rule being that marriage is a civil contract, possessing in its creation in præsenti the elements, and only the elements, attaching to any contract.

4. MARRIAGE ⊙⇒20(1)—COMMON-LAW MARRIAGE—CREATION.
   In Missouri, mutual assent to the present institution of the status of matrimony is sufficient to establish a valid common-law marriage; so the marriage may be established where a nonresident duly executed an agreement that he and a woman residing in Missouri should henceforth become husband and wife, and she accepted the offer.

5. MARRIAGE ⊙⇒3—STATES.
   The question whether the parties must be together, or within the same jurisdiction, at the time of celebrating a marriage, is for the states, except in the District of Columbia and the territories.

In Error to the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Action by E. H. Johnson, as administrator, etc., against the Great Northern Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

M. L. Countryman, of St. Paul, Minn., and C. J. Murphy, of Grand Forks, N. D. (T. A. Toner, of Grand Forks, N. D., on the brief), for plaintiff in error.

L. J. Palda, of Minot, N. D., for defendant in error.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

STONE, Circuit Judge. Writ of error from judgment for damages on account of personal injury death claim brought by wife.

The plaintiff founded her right of recovery upon the claim that she

was the wife of deceased through a common-law marriage. Plaintiff based the marriage upon a written contract sent from Minnesota, where deceased then was and continued for some time afterwards, to her in Missouri, where she resided and was employed. Her testimony was that upon receipt of the duplicate papers, which had been signed by deceased, she signed them and returned one to him. The contract in question was Exhibit C in this case and was as follows:

"St. Paul, Minn., March 10, 1916.

"It is hereby agreed, by and between E. R. Spiers and Mayme Woodall, from this date henceforth to be husband and wife, and from this date henceforth to conduct ourselves towards each other as husband and wife, the said E. R. Spiers to contribute to the support and maintenance of the said Mayme Woodall as her husband, and the said Mayme Woodall to conduct herself towards the said E. R. Spiers as a dutiful wife.

"[Signed]　E. R. Spiers.
"Mayme Woodall."

The contentions of plaintiff in error are concisely stated in a portion of the printed argument as follows:

" * * * Claimant has testified in the case at bar that she intended at the time of executing Exhibit C to then become the wife of decedent. If this statement of hers must be believed, and the law does not require the parties to agree in the presence of each other, then we concede that the finding of marriage in this case must be sustained."

[1-3] The state of Minnesota recognizes common-law marriages, but the contract is governed by the laws of the state of Missouri, where acceptance by plaintiff of the contractual offer made by deceased occurred. That state recognizes and enforces common-law marriages. R. S. Mo. 1909, § 8279; Dyer v. Brannock, 66 Mo. 391, 27 Am. Rep. 359; State v. Bittick, 103 Mo. 183, 15 S. W. 325, 11 L. R. A. 587, 23 Am. St. Rep. 869; State v. Cooper, 103 Mo. 266, 15 S. W. 327; Banks v. Galbraith, 149 Mo. 529, 51 S. W. 105; Topper v. Perry, 197 Mo. 531, 95 S. W. 203, 114 Am. St. Rep. 777; Bishop v. Investment Co., 229 Mo. 699, 129 S. W. 668, Ann. Cas. 1912A, 868; Imboden v. Trust Co., 111 Mo. App. 220, 86 S. W. 263; Davis v. Stouffer, 132 Mo. App. 555, 112 S. W. 282. Under these decisions the rule seems to be that marriage is a civil contract, possessing in its creation in præsenti the elements, and only the elements, attaching to any contract, but that because it establishes a legal status of grave concern to the state and society, and because of the natural temptations to perjury, and the difficulties of combating such testimony, both of which frequently arise, the courts will closely scrutinize testimony intended to establish such a contract after the death of one of the parties thereto.

[4, 5] The court fairly submitted the facts of execution, time of execution, and intent at time of execution of the contract. The evidence has been carefully examined, and in our judgment there was substantial evidence upon all of those points to sustain the verdict of the jury in favor of the plaintiff. In fact, so far as the matter of present intention of the parties is concerned, it may be doubted whether there was any room for submission to the jury. The con-

tract was written, and its expressions are not only unambiguous, but are emphatic as to that point. The agreement is:

" * * * From this date henceforth to be husband and wife, and from this date henceforth to conduct ourselves toward each other as husband and wife. * * * "

In approaching the proposition that the parties must be together or within the same jurisdiction, it is to be noted that this matter of marriage is for the states, except in the District of Columbia and the territories (Davis v. Pryor [8th Cir.] 112 Fed. 274, 50 C. C. A. 579; 26 Cyc. 829, and citations in notes 12 and 13 thereto), and is to be determined by the law of the state where it was contracted or celebrated (26 Cyc. 829, and citations in note 14 thereto). So far as the law on the point here involved has been defined by the adjudications of the Missouri courts, it will be followed, irrespective of the view which might be taken by this court, if the question were open. A careful examination of the above-cited Missouri cases, and of many others from that state, convinces that in that state the marriage contract possesses the elements of an ordinary contract and none others. That contract establishes a very important status, but the contract itself is in no respect peculiar. Mutual assent to the present institution of the status is all sufficient. No other act, such as cohabitation (Davis v. Stouffer, 132 Mo. App. 555, 112 S. W. 282), is necessary to complete the institution of the status where the mutual assent contemplates a marriage in præsenti. Why should the physical presence of the parties be essential to the legality of this contract, any more than of any other? It is not for us to devise means of making common-law marriages difficult. It is our duty to recognize the law as it exists. Nor is there any reason why the parties should be within the same jurisdiction. The existence and validity of the contract must be determined by the law of the place where it is legally regarded as made. Here, however, there is no point in the suggestion, for both of the states involved approve common-law marriages.

The judgment is affirmed.