## Globus' Petition

*Glider & Greenberg,* for petitioner.

SMITH, P. J., June 16, 1947.—This matter comes before the court on a petition for a declaratory judgment.

Petitioner avers that he is an officer in the United States Navy; that he resides with his wife Doryce Globus and two minor children, Diane Cheryl, a daughter of his wife by a former marriage, and Karla Dee, a child by the present marriage, in the City of Philadelphia, Pa., where he has resided since December 23, 1944; that his wife had been previously married to Archie Edington of Washington, D. C., as of September 1, 1941; that on July 20, 1944, a decree of divorce a mensa et thoro was entered by the District Court of the United States for the District of Columbia in the case of Archie Edington v. Doryce Edington; that on July 20, 1945, a final decree of divorce was entered in the case of Doryce Ernestine Bracey Edington (his wife) against Archie Edington by the First Civil Court, Bravos District, Chihuahua, Mexico, and that the record of this case shows that an appearance and waiver was entered for Archie Edington. A photostatic copy of the said divorce decree of the said court in Mexico, together with the said entry of appearance and waiver of Archie Edington is attached to this petition and marked Exhibit A.

The petition further avers that petitioner was united in marriage with Doryce Ernestine Bracey by virtue of a proxy marriage ceremony held in the City of

Juarez, State of Chihuahua, Mexico. A photostatic copy of the said marriage certificate is hereto attached, made a part of this petition and marked Exhibit B.

The petition further avers that in September 1945 petitioner applied to the District Disbursing Officer, Fourth Naval District, United States Naval Base, Philadelphia, Pa., for increased allowance on account of the legal dependents under the Pay Readjustment Act of 1942 and said allowance was granted as of September 1945; that in November of the same year petitioner was notified by the said district disbursing officer that facts had come to the attention of the United States Navy compelling the said department to revoke the original grant for increased allowance for legal dependents and claiming reimbursement from petitioner for the allowance already paid; that the district disbursing officer indicated that said allowance would not be resumed until favorable disposition was made of certain indictments pending in the Quarter Sessions Court of Philadelphia, Pa., against petitioner and his wife; that in November 1945 petitioner and his wife were indicted in the jurisdiction of Philadelphia County of fornication and adultery as of Municipal Court, Philadelphia, Pa., November sessions, 1945, nos. 742 and 745, on charges brought by the former husband of petitioner's wife; that a trial was had on said bills of indictment before Bonnelly, J., of the Municipal Court on March 1, 1946, and petitioner and his wife were found not guilty; that on August 3, 1946, a daughter, Karla Dee, was born to petitioner and his wife; that on October 16, 1946, petitioner again applied to the Navy Department for increased allowance on account of legal dependents; that on January 3, 1947, petitioner received a decision rendered by the Comptroller General of the United States in which the request for increased allowance was disallowed until petitioner's marital status had been legally determined;

so that the legitimacy of his child be established and so that he may comply with the conditions set forth in the decision of the Comptroller General of the United States for the purpose of obtaining increased allowance for legal dependents.

The primary question is whether the proxy marriage entered into between petitioner and Doryce Ernestine Bracey in the City of Juarez, State of Chihuahua, Mexico, on August 24, 1945, was a valid and subsisting marriage, and whether their daughter, Karla Dee Globus, born August 3, 1946, was conceived and born as a legitimate child of this marriage.

The exhibits to the petition indicate that proxy marriages are lawful in Mexico. Disregarding for the moment the question of the effect in the State of the Mexican divorce proceedings, the fact remains that the marriage in Mexico was unquestionably valid there. The general rule is that a marriage valid where contracted is valid everywhere, and this rule has long been upheld in this State: Phillips v. Gregg, 10 Watts 158, 168; Van Storch v. Griffin, 71 Pa. 240, 244; Stull's Estate, 183 Pa. 625, 630; McCausland's Estate, 213 Pa. 189; Schofield v. Schofield (No. 1), 51 Pa. Superior Ct. 564; Commonwealth v. Custer, 145 Pa. Superior Ct. 535.

Of course, there are exceptions to this rule in the case of marriages repugnant to the public policy of the domicile of the parties, in respect of polygamy, incest, or miscegenation, or otherwise contrary to its positive laws: Stull's Estate, supra. However, we are not here concerned with any such question.

The laws of the State of Chihuahua, Mexico, with respect to proxy marriages provide as follows:

"Title 4—Civil Code—State of Chihuahua, Mexico

"Chapter I—General Dispositions

"Art. 45—When the interested parties cannot be present they can be represented by a proxy for the act whose authority must be signed before two witnesses.

In matrimonial cases, it is necessary that the power is given in a public instrument or order given in private writing or document signed by the grantor and two witnesses, or signed before a notary public, First Civil Judge, Minor or Peace Judge."

Furthermore, in any consideration of a case of this kind we must bear in mind that the legitimacy of a child is affected and this also would be a factor in sustaining the validity of the marriage. See Thorn's Estate, 353 Pa. 603, 606, Commonwealth v. Custer, supra, Thewlis' Estate, 217 Pa. 307, Holben's Estate, 93 Pa. Superior Ct. 472, and Mays' Estate, 141 Pa. Superior Ct. 479.

While there are no cases showing that marriages of this nature have been adjudicated in the appellate courts of Pennsylvania, yet there are cases in Federal courts involving the legality of proxy marriages, showing that they have been recognized and upheld.

The Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, sec. 1, states:

"Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

There is a real controversy here existing and the declaration sought is of practical help in ending the controversy: Reese et al. v. Adamson et al., 297 Pa. 13, 15:

" 'It is not required that an actual wrong should have been done, such as would give rise to an action for damages, and no wrong need be immediately threatened, such as would be the proper basis for an injunction,' but 'a real controversy must exist'; further, that 'jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, or the ripening seed of one, exists between the parties, . . . and that the declaration sought will be a practical help in ending the controversy.' "

In A. L. I. Restatement of Conflict of Laws, § 124, states: A marriage by proxy, if permissible where celebrated, is valid everywhere only if the absent party consents to the marriage. Petitioner and his wife have shown their consent and ratification by living together as man and wife and in having a child born as the result of this marriage.

In Ex parte Suzanna, 295 Fed. 713, 714, 717, a woman named Sabina Suzanna, resident of Portugal where such marriages are valid, and a man named Manual Gomez, a resident of Pennsylvania where common-law marriages are valid, were married by proxy. She attempted to come within the United States and the immigation officers raised the question as to validity of the marriage. Judge Lowell, in a long and learned discussion of the subject of marriage by proxy, said (p. 714) :

"Gomez was unconsciously following an illustrious precedent set by a man who was also a native of the Iberian peninsula. In 1516 Vasco Nunez de Balboa, the discoverer of the Pacific Ocean (see Prescott, Conquest of Peru, vol. 1, p. 194)—Keats, in his famous sonnet, "On First Looking Into Chapman's Homer", wrongly ascribes the discovery to Cortes—was wedded by proxy while in Darien to the daughter, who was in Spain, of the Royal Governor Pedrarias. Quintana, Vidas de Espanoles Celebres, Madrid, 1914, p. 289.
. . .

"But is there any reason of public policy why the contract itself should require any different formalities than any other contract? Does the mere presence of the parties at the time of the making of the contract add any essential element to the agreement between them? Royal marriages celebrated by proxy have long been considered true marriages. Queen Mary of England married Philip the Second of Spain before Bishop Gardiner, the Spanish monarch being represented at

the ceremony by Count Egmont (Froude, History of England, vol. 6, p. 189), and there are records of other such marriage (Tiffany, Domestic Relations (3d ed.) p. 54). We have already noticed the marriage by proxy of Balboa, and the custom is said to have been common during the Middle Ages in Europe. 32 Harv. L. Rev. 477. If royalty could do it, why may not those of more common clay be allowed to follow their example? There is a very instructive decision in the Eighth Circuit to the effect that marriage, like any other contract, may be effected by correspondence. Great Northern Ry. Co. v. Johnson, 254 Fed. 683, 166 C.C.A. 181. See, also, Catholic Encyclopaedia, vol. 9, p. 702.
. . .

"In an article in the Harvard Law Review for the year 1919 (32 Harv. L. Rev. 473) Professor Lorenzen recites the history of proxy marriages, and comes to the conclusion that such a marriage is valid in any state of the Union where common-law marriages are recognized.

"The question must be decided in this case on the law of Pennsylvania, as Gomez was domiciled there. Great Northern Ry. Co. v. Johnson, 254 Fed. 683, 685, 166 C.C.A. 181. It is well settled in Pennsylvania that a common-law marriage is valid. Patterson v. Gaines, 6 How. 550, 12 L. Ed. 553; Phillips v. Gregg, 10 Watts (Pa.) 158, 36 Am. Dec. 158; Richard v. Brehm, 73 Pa. 140, 13 Am. Rep. 733. We have seen that the overwhelming weight of authority—in fact, the unanimous opinion of all judges and text-writers—is that a marriage contract, if valid where made, is valid everywhere, provided that it is not celebrated between two persons who are too nearly related to each other, or between two persons one of whom had a wife or husband still living. See cases cited above, p. 715.

"There is nothing in the law of Pennsylvania which I have been able to discover requiring the personal presence of the parties at the ceremony, and I agree

with the learned opinion of Professor Lorenzen that the proxy marriage celebrated in Portugal is valid in Pennsylvania. The result is that Sabina Suzanna was the wife of Manuel Gomez, and that she had the legal right to enter the United States."

In the case of Kane v. Johnson, 13 F. (2d) 432, Morton, J., said (p. 432):

"The case has been pending since 1923, the applicant having been admitted to the country on bond. During this interval Ex parte Suzanna (D. C.) 295 F. 713, has been decided by Judge Lowell, in which, upon a careful examination of the question, he held that marriages by proxy were valid under the law of Portugal, and that the validity of a marriage ceremony is to be determined by the law of the place where it was performed. No question was made but what the marriage here in question was a valid civil ceremony under the law of Portugal. It is plainly my duty to follow Judge Lowell's decision. Even if it were not, I should reach the same conclusions, for the reasons and upon the authorities given in his opinion."

In 1 Freedman on Marriage and Divorce 23, §13, speaks with approval on marriage by proxy and states:

"This rule has been adopted by the American Law Institute, with the proper reservation that such proxy marriages are entitled to recognition 'only if the absent party consents to the marriage'."

When this marriage was properly and legally entered into in Mexico and the parties have consummated it by living together as husband and wife, this jurisdiction will recognize the validity of such marriage on the ground that a binding contract of marriage was made and entered into in Mexico by the parties and confirmed by their subsequent cohabitation.

### Decree

And now, to wit, June 16, 1947, on consideration of the petition of Karl Globus with the exhibits thereto annexed, the court orders and decrees that the proxy

marriage entered into by him and Doryce Ernestine Bracey Edington, in the City of Juarez, State of Chihuahua, Mexico, on August 24, 1945, was and is a legal and valid marriage, and is so recognized by the Commonwealth of Pennsylvania and that the child, Karla Dee Globus, born on August 3, 1946, as the result of this marriage, is a legitimate child of the said Karl Globus and Doryce Ernestine Bracey Edington Globus.