---o---

CHAS. CARGILE, *et al.*, Respondents, *vs.* WALTER H. WOOD, *et al.*, Appellants.

1. *Husband and wife—Marriage—Evidence—Presumption—Cohabitation—Reputation.*—Where parties have cohabited together and held themselves out as man and wife, and there are circumstances from which a present contract may be inferred, the law, out of charity and in favor of innocence and good morals, will presume matrimony. The law in general presumes against vice, and in favor of innocence and good morals, and on this ground holds acknowledgment, cohabitation and reputation presumptive evidence of marriage ; but cohabitation and reputation must both exist before the presumption can be raised.

2. *Presumptions—Status—Change must be shown.*—When a particular status exists the law will presume its continuance, and when it is asserted that it has been changed, some evidence of that fact must be produced.

*Appeal from Jackson Circuit Court.*

*Black & Case*, for Appellants.

I. The court erred in holding the burden of proof to be on these defendants for two reasons : First, plaintiffs allege that they are the only heirs of Augustus Cargile, and this is denied; and again, because by the pleadings it is admitted that the child was born of the said Augustus and Cynthia.

It is always held that when it is shown that a child was born of the alleged parents, the presumption is that it is legitimate— in favor of innocence—and it devolves upon those who aver illegitimacy to prove it ; with much more force does this rule apply when the facts raising the presumption are admitted. (Carnjolle vs. Ferrie, 23 N. Y. 90–108 ; Boyer vs. Dively, 57 Mo. 510 ; Nathan's Case, 2 Brew. 149 ; Star vs. Peck, 1 Hill, 270.)

II. The court should have given defendants' second instruction, for, in addition to the admitted fact of the birth of the child of said parents, it adds the further fact of cohabitation as man and wife, and that such facts raise a presumption of legitimacy, where the parties are all dead, as here, cannot be denied. (See above authorities.)

III. A mutual agreement between a man and a woman to be husband and wife, especially if followed by cohabitation, constitutes a good marriage. (Rose vs. Clark, 8 Paige Ch. 574 ; 2 Kent 87 ; 31 Mich. 127.)

IV. A marriage may be proved from acts of recognition, cohabitation, birth of children and the like ; and this even when the parties originally came together under a void contract, and also when the intercourse was at the commencement illicit. (Rose vs. Clark, 8 Paige Ch. 574 ; In re Taylor, 9 Paige Ch. 611 ; Fenton vs. Reed, 4 John. 53 ; Vincent's case, 60 Penn. St. 239 ; Physick's case, 4 Am. Law Reg. 419 ; Nathan's case, 2 Brew. 149 ; Goodman vs. Goodman, 28 Law J. 745 ; Grotgen vs. Grotgen, 3 Bradf. 373.)

V. In case of conflicting presumptions on the subject of illegitimacy, that in favor of innocence must prevail. (Senser vs. Bower, 1 Penn. Ch. 450.)

VI. The court erred in adding to defendants' third instruction the words "and were so reputed," for, without such addition, the

instructions required the jury to find more facts than the law requires from which a marriage may be inferred. Moreover, by adding the additional fact of reputed marriage, defendants were deprived of the benefit of the leading facts in evidence, and that of repute made the turning point in the case.

VII. Plaintiff's first instruction should not have been given. While in some cases, where the cohabitation was avowedly illicit, and nothing appeared to indicate a change, it is held that the presumption is that the continued cohabitation is illicit, still this instruction makes such a presumption continue, no matter what the evidence is or may be of the character of the subsequent cohabitation.

The third instruction is faulty for a like reason, and for the further reason that it assumes particular dates, and from those dates on excludes entirely from the consideration of the jury all evidence of the cohabitation of the parties and of their treatment of each other, and of their children.

VIII. The instructions given by the court are subject to the same objections as those given at the request of the plaintiff. They also leave the jury to determine what facts, when found, raise a presumption of innocence. The second is so framed as to mislead the jury, and when those and those given at the instance of the plaintiff are taken together, it is difficult for a jury to determine by what rules they are to be guided.

*Gage & Ladd*, for Respondents.

I. It was an undisputed fact in this case, clearly established by appellants' own evidence, that the connection between Cargile and Cynthia was illicit in its origin, and so continued from 1854 to the date of the indictment in 1859–60; that their apparent matrimonial cohabitation during all that period was in fact meretricious, and that there was no visible change in the nature of that cohabitation at any time after the indictment.

If a court is not permitted to give instructions which leave out of view any portion of the evidence in the case, it certainly cannot be required to give instructions which disregard undisputed, conceded facts.

The court could not then give an instruction in this case which disregarded the above admitted facts. If it be admitted that proof of birth of issue, raises a presumption of their legitimacy; that proof of cohabitation raises a presumption of marriage, and in short, that all things are presumed to have been done rightfully rather than wrongfully; the meaning of this is, that the mere fact of birth and nothing more is presumptive of legitimacy; the mere fact of cohabitation or cohabitation and reputation, raises a presumption of marriage, the mere fact that an act is done raises a presumption that it is done rightfully; it does not mean that birth under circumstances which clearly indicate bastardy is presumptive of legitimacy: it does not mean that cohabitation and reputation, under circumstances which clearly indicate or confess an illicit intercourse, raise the presumption of lawful marriage, nor that the doing of an act which clearly stamps it wrong, authorize a court or jury to declare it rightful; nor can a court, when such facts are shown coupled with such circumstances, separate the fact from the attendant circumstances and draw from it the presumption which would arise were there no such circumstances in the case. A court must then take the whole case—the main fact with all the circumstances—and submit it to the jury.

II. The second instruction asked by appellants' instruction declares that a child born of a cohabitation confessed to be illicit in its origin, and continued in the same way for many years, is to be presumed legitimate. It undertakes to consider the fact of cohabitation and birth, stripped of the attendant circumstances which clearly indicated their character. It is liable to the further objection that it imputes to mere cohabitation a legal result which only follows cohabitation and reputation of marriage. (Commonwealth vs. Stump, 53 Penn. [St.] 132; Brinkley vs. Brinkley, 50 N. Y. 197; Blackburn vs. Crawfords, 3 Wall. 175; Clayton vs. Wardell, 4 Const. 236; Bishop on Mar. & Div. § 438; Letters vs. Cady, 10 Cal. 537; Gaines vs. New Orleans, 6 Wal. 642; Bicking's Appeal, 2 Brews. 202.)

III. The court properly refused appellants' instruction as asked, and gave it after inserting the words " and were so reputed;"

that is, were reputed to be man and wife. According to the authorities cited the court was right in inserting these words. The instruction was wrong, for the reasons already given regarding the second instruction, and the court did right in refusing it as asked, and appellants cannot complain of it as given, as the error was in their favor and for their benefit.

IV. The law of Missouri requires a ceremonial marriage. The legislature of Missouri, the only power in the State that can make and declare its laws, have so declared. We have on this subject a clear legislative construction of our then existing laws by which all courts are bound. (Sess. Acts 1865, p. 68.)

WAGNER, Judge, delivered the opinion of the court.

This was a suit in partition brought by Chas. Cargile and eight others against Walter H. Wood and five others of his brothers and sisters, for the partition of lands in Jackson county and Kansas City.

The petition alleged that Augustus Cargile died on the 10th day of December, 1862, intestate, seized of the property, and that the plaintiffs and defendants were his brothers and sisters, and descendants of such brothers and sisters, and that they were his only heirs at law.

Afterwards Robert H. Kilgore and several other parties, who were the brothers and sisters and descendants of other brothers and sisters of Cynthia Kilgore, who, they alleged, was the wife of Augustus Cargile, were made defendants, and filed their answer admitting the death of Augustus Cargile, but they denied that he died leaving as his only heirs the original plaintiffs and defendants in the suit, and alleged that the said Augustus and Cynthia, his wife, died about the same time, leaving as their only heir at law one infant child named Catharine, begotten of the bodies of said Augustus and Cynthia during their marriage; that said child died shortly thereafter, and then allege the relationship of the defendants and their interests in the property.

The reply to the answer denied that Augustus Cargile had any lawful wife. On the trial before a jury the Court submitted the following issue: "It is admitted by the pleadings that a child

was born of the said Augustus and said Cynthia, and the only question for the jury to determine in this cause, is the following : Were the said Augustus and Cynthia lawfully married to each other prior to the birth of said child, Catharine ?" The defendants objected to the issue as framed, but the court overruled the objection, and then held and ruled that the burden of proof devolved upon the defendants, to which ruling they excepted.

The evidence shows that at, and prior to, 1853, Augustus Cargile and Cynthia Kilgore lived in the State of Georgia ; that the Kilgores lived on the lands of Cargile, and that Cynthia taught a school at Cargile's house, he being at that time a widower. About the time above stated Cargile and Samuel Kilgore, a brother of Cynthia's, left Georgia and went to Kansas, and in 1854, Cargile went back to Georgia and got Cynthia and took her to Kansas. Shortly after this he again went to Georgia and brought the father of Cynthia and other members of the family and some other persons, called a colony. Cargile and Cynthia and Samuel Kilgore remained for some time in Kansas, where he was selling a lot of goods. In 1855, Cargile bought the tract of land in Jackson county now in dispute, and removed on it and remained there until the year 1861, when he moved to Benton county, in Arkansas. Cargile and Cynthia, during all this time lived and cohabited together as man and wife. She had charge of the household affairs and managed them as a wife usually does. They had children in this State, which all died and were buried in the family burying ground on the farm, and after they moved to Arkansas they had the child Catharine, from whom the defendants seek to derive their title. Cargile and Cynthia both died in 1862, and the child died in 1863. The evidence adduced by the defendants strongly tends to show that Cargile, after he came to this State, treated Cynthia as his wife by holding her out to the community as such on all occasions ; that he introduced her as his wife, requested people to visit her, paid her bills, and applied to her in the presence of others such titles as husbands are accustomed to apply to their wives. Defendants further undertook to show, and introduc'd witnesses who testified that an actual marriage was consummated between the parties some time, perhaps

in the fall of 1859, and that the marriage ceremony was performed by a Mr. Perry, a preacher of the gospel.

On the other side, the plaintiffs introduced a strong array of testimony in contradiction of the defendants' evidence, and which tended to prove that Cargile and Cynthia were never married; that on many occasions they both declared they never had been married, and that Cargile said he never would marry her. The relations on his side, it seems, were opposed to the marriage on account of the inequality of standing and rank existing between the respective families, and they all depose to the declaration made by him, that he had not married Cynthia and would not do so. In 1859, both Cargile and Cynthia were indicted in the Jackson county circuit court for living in adultery, and they were both arrested. As to Cynthia, the proceeding was dismissed, but Cargile pleaded guilty and was fined. It was after this that they claim that the marriage ceremony was performed. A witness states that subsequently thereto he told Cargile that he understood they were going to indict him again, and that Cargile answered that it would do them no good, as he had the matter fixed up. No record of the marriage was in existence, and evidence was given tending to show that no formal marriage ever took place. The minister, who, it was alleged, performed the ceremony, was dead. It was further shown that as late as 1861, Cargile desired to borrow some money, and proposed giving a deed of trust, to secure its payment, on some real estate; that he executed the instrument by himself, and when the lender informed him that he should require it also to be executed by his wife, he answered that he had no wife. In the same year he made a conveyance to another person by himself, without any wife joining in the execution. The servants, who always lived in the family, testified that there never was any marriage, and the parties in their private intercourse always admitted it. A boy, who was a house servant, who went to Arkansas with Cargile and Cynthia, deposed that on the journey Cynthia threatened to whip him if he ever told anybody that Cargile and she were not married. A great deal of cumulative testimony, amounting to admissions of the parties that they were not married, was given.

Such, in brief, is the substance and the main points in the tes-
timony.    The case manifestly shows that the commencement of
the intercourse and cohabitation between Cargile and Cynthia was
illicit and meretricious.  Whether there was a subsequent mar-
riage, and at what time it took place, was for the jury to decide
upon all the evidence in the case.  If the court properly instructed
them on the law their verdict is conclusive.

The defendant asked the following instructions :

1. If the jury believe from the evidence that Augustus Cargile
and Cynthia Kilgore were at any time prior to the birth of the
child Catharine, married to each other, then they will so find the
issue.

2. The court instructs the jury that it is admitted by the plead-
ings in this cause, that a child was born of the said Augustus
and Cynthia, and if you believe that at and for any time prior to
its birth, they cohabited together as man and wife, then the pre-
sumption of the law is that the child is legitimate, and it devolves
upon the plaintiffs to show and prove to the satisfaction of the
jury that said Augustus and Cynthia were not married.

3. The jury are instructed that marriage is a civil contract,
and it is not necessary that the same should be solemnized before
a minister of the gospel or an officer of the law, and if you be-
lieve from the evidence, that at any time prior to the birth of the
child Catharine, Augustus Cargile and Cynthia Kilgore consented
and agreed with each other to be· husband and wife, and cohab-
ited together as such husband and wife, then such facts consti-
tute a lawful marriage, even though they or either of them sup-
posed or believed that a solemnization before a minister or. officer
of the law was necessary to comply with the forms of the law,
and no subsequent act or declaration by them, or either of them,
could in anywise annul such marriage, and although the jury may
believe from the evidence that Augustus Cargile and Cynthia Kil-
gore at first became intimate in the State of Georgia, and al-
though they were not then married to each other when such inti-
macy occurred, still if you believe from all the evidence in this
cause, that said Augustus Cargile brought said Cynthia out to
Missouri on or about 1854 ; that subsequently they cohabited to-

Cargile, et al. v. Wood, et al.

gether here as man and wife, and during such cohabitation treated each other as man and wife [inserted by the court : "and were so reputed"], had children which they treated as father and mother, and held them to be their children ; that they thus lived and cohabited together until their death in 1862, and at such death had the child Catharine then living and about eight or twelve months old, then the law presumes, and you have a right to infer, that there had been a lawful marriage between them prior to the birth of the said child Catharine.

4. The court instructs the jury that the proceedings had on the indictment, and the plea of guilty read in evidence, and the judgment thereon, is not in this cause conclusive evidence that the said Augustus and Cynthia were not married even at the time said proceedings were had.

Instructions numbered 1 and 4 were then given by the court ; number two was refused, and number 3 was given after the insertion of the words, *"and were so reputed,"* after the words "treated each other as man and wife," and before the words "had children," had been inserted by the court ; to which ruling of the court in refusing No. 2, and inserting said words in No. 3, defendants at the time excepted.

The following instructions were given at the request of plaintiffs :

1. If the jury believe from the evidence that the said Augustus Cargile and Cynthia Kilgore, at any time before the birth of the child Catharine, lived and cohabited together in a state of adultery, then if they lived together afterwards, the law presumes that they so continued to live together in adultery, and it devolves upon said parties to prove to the satisfaction of the jury, that they were lawfully married before the birth of said child, and unless they have so proved, the jury must find their verdict that they were not married.

2. Although the jury may believe that the said Augustus Cargile lived and cohabited with said Cynthia Kilgore, and had children by her, and treated her with kindness and affection, and spoke of her in terms of endearment, and even introduced her as his wife, yet the jury are instructed that all this is not conclusive

evidence that there was any marriage in fact between them, and if the jury believe from the evidence that they were not lawfully married, they must so find their verdict.

3. The jury are instructed that, although the jury may find from the evidence that said Augustus Cargile and Cynthia Kilgore cohabited together as man and wife, and had a child or children as the fruit of such intercourse, and treated such child or children as parents usually treat their legitimate children, and treated each other as husband and wife, and introduced each other to other persons as husband and wife, still if the jury further find that such cohabitation commenced and was continued, and such treatment of each other by said Augustus and Cynthia was had up to about the year 1859 or 1860, without any marriage between them, and that after the years 1859 and 1860, said cohabitation and treatment between the parties was continued in the same manner as before, until the death of said Augustus and Cynthia in the year 1862, then the presumption of a marriage between said Augustus and Cynthia, arising from their cohabitation and treatment of each other, is destroyed, and a contrary presumption arises that such continued cohabitation and treatment of each other was without the sanction of marriage, and if the jury so find that said Cargile and Cynthia lived together as husband and wife till the year 1859 or 1860, without being married to each other, they will find this issue in the negative, unless they find from other evidence than that of the cohabitation of the parties, and their treatment of each other and of their children, that the said Augustus and Cynthia were actually married to each other.

To the giving of the above instructions and each of them, defendants objected, and to the ruling of the court in giving the same, excepted at the time.

The following instructions were given by the court on its own motion:

1. The court instructs the jury that it is admitted by the pleadings that the child Catharine was born of said Augustus and Cynthia, and if you believe from the evidence that prior to the birth of said child the said Augustus and Cynthia cohabited together as man and wife, then the presumption of the law is that

said child was born of said Augustus and Cynthia in lawful wedlock, and it devolves upon the plaintiffs to rebut the presumption of marriage so arising; and if you further believe from all the evidence that the said Augustus and Cynthia were not married to each other, or that prior to said cohabitation as man and wife they lived together in illicit intercourse, then the presumption of marriage between them so arising from the birth of said child and the cohabitation of said Augustus and said Cynthia is destroyed.

- 2. The court further instructs the jury that another question for your determination is, whether from all the evidence there was or was not a ceremonial marriage between said parties, Augustus Cargile and Cynthia Kilgore, and if from the evidence you find there was a ceremonial marriage between them, performed by a minister of the gospel, then you need inquire no further, but find such issue in the affirmative.

But should you find from the evidence that there was no such ceremonial marriage between said parties, then it will be your duty to determine whether the evidence taken together satisfies you of such facts as will raise a presumption of marriage between them, and you are instructed that marriage is a civil contract, and in order to constitute a lawful marriage it is not necessary that the ceremony of marriage shall have been performed by a minister of the gospel or an officer authorized by law to perform such ceremony.

It is in evidence before you that said parties lived and cohabited together. If from the evidence you believe that at the commencement their intercourse was illicit, then the law presumes such illicit intercourse continued, and there must be evidence to show that its character was subsequently changed. If you are satisfied from the evidence that the parties afterwards recognized new relations; if they removed from the State of Georgia to Missouri and there cohabited together and held themselves out to the world and their associates as man and wife, and treated each other as such, and were so reputed, that they had children which they recognized and treated as their own, that they thus continued their cohabitation on a different footing from what

it had formerly been, then the presumption of the continuance of such illicit intercourse is destroyed, and such facts are evidence from which you have a right to presume a lawful marriage between said parties, though there was no formal solemnization of marriage between them.

If, however, you shall believe from the evidence that at the commencement, the intercourse between said parties was not illicit, then the presumption is in favor of their innocence, and so continued until the contrary is shown ; and if you shall find from the evidence that the said parties from the commencement of their intercourse cohabited together and held themselves out to the world and their associates as man and wife, and treated each other as such, and were so reputed, and had children which they treated and acknowledged as their own, and that they thus continued their cohabitation until their death, then the presumption of law is that said parties were lawfully married, and you should so find, even though there was no formal solemnization of marriage between them.

But should you find from the evidence that said parties during the time that they cohabited together did not thus hold themselves out as man and wife, and were not so reputed, but, on the contrary, that their intercourse during all said period was illicit and was so regarded by themselves, then your finding of said issue should be in the negative.

3. The court instructs the jury that the two deeds read in evidence, executed by said Augustus Cargile alone, are withdrawn as evidence from the jury, and will not be regarded or taken into consideration in making the verdict.

To the giving of which instructions numbers one and two defendants objected, and to the giving of same excepted at the time.

Where parties have cohabited together and held themselves out as man and wife, and there are circumstances from which a present contract may be inferred, the law, out of charity and in favor of innocence and good morals, will presume matrimony. The law in general presumes against vice and immorality, and on this ground holds acknowledgment, cohabitation and reputation presumptive evidence of marriage. Mere cohabitation is not usually

considered sufficient.   Bishop lays down the doctrine that " co-
habitation and the reputation of being husband and wife are
usually considered together in questions concerning the proof of
marriage, the one being in a certain sense the shadow of the
other.   Some of the authorities favor the idea that reputation of
itself may be received as sufficient proof *prima facie*, but it must
be uniform and general; and if there is a conflict in the repute,
it will not establish the marriage.  · On the other hand, its suffi-
ciency in any case has been denied, unless there be accompany-
ing proof of cohabitation."   (1 Bish. Mar. and Div. 5th ed. §
438.)   Cohabitation and reputation are at best only presumptive
proofs, and when one of these foundations is withdrawn, what
remains is too weak to build a presumption on.   There is good
sense in the Scotch law, by which cohabitation alone is considered
insufficient, and which requires in addition habit and repute, be-
cause it is said the parties may eat, live and sleep together as
mistress and keeper without any intention of entering into mar-
riage.   Cohabitation is simply the first step, and when that is
accompanied by an acknowledgment of the matrimonial relations,
and treating each other as a man and wife, and holding one an-
other out to the world as such, there may reasonably be a pre-
sumption founded upon all these facts that the intercourse is law-
ful instead of meretricious.   These things all go to form the cir-
cumstances upon which reputation is grounded.   Reputation con-
sists of the belief and the speech of the people who have an
opportunity to know the parties, and have heard of and observed
their manner of living.   But cohabitation may be notoriously
illicit, and known to be so in the neighborhood in which the par-
ties reside.   In such a case the law would surely not presume
that it furnished any presumption or evidence of marriage.   The
reputation of the parties and their mode of life, founded on facts,
would repel it, and a presumption in- their favor would assert
what was well known to be a falsehood.   Therefore, cohabitation
and reputation must both exist before the presumption can be
raised.   If parties cohabit together as man and wife, treat each
other as such, and acknowledge the existence of that relation,

and thereby acquire the reputation of being married among the people, the fact of marriage may well be presumed. But if the facts show the contrary and the reputation is that they are not married, no such presumption can be indulged.

The court therefore declared the law correctly, when it required reputation as well as cohabitation.

When a particular status exists, the law will presume its continuance, and when it is asserted that it has been changed, some evidence of that fact must be produced. When the connection is illicit in its origin, the presumption is that it is likely to continue so, and if it is alleged that it was subsequently changed, it must be shown at what time it became lawful. (Clayton vs. Wardell, 4 Comst. 230.) "When the connection was at first notoriously illicit," said Lord Eldon in Cunningham vs. Cunningham (2 Dow P. C. 482), "and a change in the character of the connection must be operated, and the means employed for that purpose are such as to leave half the world in doubt as to the relations, one-half thinking one way, and the other half the other, at what time, in what circle, could it be said that there was such a habit and repute as raised the presumption that the parties had mutually consented to be husband and wife? He could not admit that mere cohabitation as man and woman was a cohabitation as husband and wife."

If the connection between the parties to this case was at first meretricious, it was to be shown by evidence at what time the new relation commenced, if ever, and we think the law was fairly stated by the instruction of the court.

The above discussion comprehends all the essential issues raised by the instructions. We have been unable to discover in them any material error. At all events, they were sufficiently favorable to the defendants.

The objection raised to the issue presented by the court to the jury is surely not maintainable. The issue will permit of no such construction as the counsel ascribe to it. It did not restrict the marriage to any particular time. The question it presented was whether the parties were at any time ever married prior to the birth of the child Catharine, and that was the question in the

case. Nor do we perceive any error in the ruling of the court devolving the burden of proof upon the defendants. Their answer was in the nature of a petition, expressly alleging a marriage between Cargile and Cynthia, which was denied by the plaintiffs. This formed an issue, then, in which the affirmance or onus was placed upon the defendants. No error whatever has been found in the record, and the judgment should be affirmed.

Judges Napton and Sherwood concur. Judge Hough not sitting.