Plattner v. Plattner.

---

PLATTNER, Respondent, v. PLATTNER, Appellant.

St. Louis Court of Appeals, November 14, 1905.

1. MARRIAGE: Common Law Marriage: Evidence. There is no inflexible rule of evidence by which a common law marriage shall be proven; it may be proven by facts and circumstances and the conduct of the parties, and the fact may be inferred in the absence of direct evidence of the contract, where the testimony is such as to warrant the inference.

2. ———: ———: Presumption: Where the evidence relating to a common law marriage is circumstantial the presumption is always in favor of morals and innocence and against vice.

3. ———: ———: Evidence: In an action for divorce, where the plaintiff claimed a common law marriage with defendant and the evidence showed that plaintiff and defendant had lived together for thirteen years, had two children, had the reputation of being man and wife in the community where they lived, that plaintiff was introduced by the defendant as his wife, that the two had signed and acknowledged deeds as man and wife, the evidence was sufficient to show a common law marriage though no definite contract was proven. This is true though the evidence showed that the plaintiff knew that no ceremony was performed and that a license was necessary in order to be married according to statutory form.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Paxson & Clark* for appellant.

The court erred in refusing the demurrer to plaintiff's evidence, because the petition alleged a marriage on the fifteenth day of April, 1890, and plaintiff (after having sworn to three dates of such marriage) admitted that she never was married to defendant on that day or any other, but relied on a common-law marriage. A plaintiff cannot allege one cause of action and recover on another. Yall v. Gillham, 187 Mo. 393. "In all cases in which a party alleges that a marriage was celebrated at a particular time and place, he must prove that it was so celebrated at that time and place and can not prove cohabitation and repute to raise a presumption of a marriage at some other time and place." 14 Am. & Eng. Ency. of Law (1 Ed.), p. 530 and cases there cited. Blackburn v. Crawford, 3 Wall. (U. S.) 175. Redgrave v. Redgrave, 38 Md. 93. "A mere agreement to marry at some future time followed by cohabitation will not constitute a marriage." Bissell v. Bissell, 55 Barb. 326; Duncan v. Duncan, 10 Ohio St. 181; Cargile v. Wood, 63 Mo. 501; Dyer v. Brannock, 66 Mo. 400; Van Dusan v. Van Dusan, 97 Mich. 70; Rose v. Rose, 67 Mich. 619; Turpise v. Pub. Admr., 2 Bradf. (N. Y.) 424; State v. Hansbrough, 181 Mo. 353.

*M. Hartmann* for respondent.

The petition alleges a marriage on or about the 15th day of April, 1890, and plaintiff testified she was married to defendant on the 25th day of April, 1890. It is only where a celebration is alleged that it is necessary to prove the same. Richards v. Brehm, 73 Pa. St. 145; 14 Am. & Eng. Ency. of Law (1 Ed.), p. 529; 2 Greenleaf on Ev. (Lewis Ed.), secs. 460, 462. Where prior to cohabitation the parties consented and agreed to live to-

gether as husband and wife, and for many years have so lived together, the agreement was made *in verba de presenti,* followed by cohabitation. Dyer v. Brannock, 66 Mo. 391, 400; Schouler on Dom. Rel. (5 Ed.), p. 46, sec. 26; 2 Greenleaf on Ev., secs. 460, 462. To prove a common-law marriage the court can infer an agreement where the testimony is such as to warrant an inference. In the case at bar, the parties agreed to be married, and followed that agreement by cohabitation; two children were born; the children were baptized according to the faith of their father; the children were recognized as their children and were treated by them as legitimate; respondent was introduced by appellant as his wife; respondent assumed his name, that they were reputed to be husband and wife in the community in which they lived; that they joined as man and wife in the conveyance of real estate, and that they lived together as husband and wife for fifteen years. A common-law marriage is proven by the testimony. State v. Cooper, 103 Mo. 266; State v. Bittick, 103 Mo. 191; Cargile v. Wood, 63 Mo. 501; La Reviere v. La Reviere, 97 Mo. 82; Johnson v. Johnson's Admr., 30 Mo. 72; State v. Jenkins, 139 Mo. 537; Adair v. Mette, 156 Mo. 512; State v. Ulrich, 110 Mo. 350.

BLAND, P. J.—The petition alleges that plaintiff was lawfully married to defendant on April 15, 1890; that she continued to live with defendant as his wife until March 25, 1903; that two children were born of the marriage, both of whom have been taken from plaintiff by the defendant. The petition also alleges many incidents of barbarous and inhuman treatment of plaintiff by the defendant, beginning shortly after the marriage and continuing at intervals, to March 25, 1903, on which date, it is alleged, the plaintiff was compelled by illtreatment to leave the defendant; that they have lived separate and apart from said date. The petition further alleges the abandonment by defendant of plaintiff

without just cause, his failure to contribute to her support, and prays for an order compelling him to support her.

The answer was a general denial.

After hearing the evidence, the court found the issues for the plaintiff and "adjudged and decreed that the defendant do pay to plaintiff the sum of twenty-five dollars per month, due and payable on the first Monday of each month after the date of the decree." Appropriate provisions were made in the judgment for its enforcement. Defendant appealed.

Plaintiff's evidence showed the cruel and barbarous treatment alleged in her petition and that the defendant deserted her without cause, and the decree of the circuit court should not be disturbed if there is substantial evidence of the marriage.

There was no marriage license taken out by the parties nor was there a celebration of their marriage.

Plaintiff relies upon a common law marriage. Defendant contends that the evidence is insufficient to prove a marriage as at common law.

The evidence shows plaintiff was a widow and had three minor children by her first husband. Defendant was a widower without child or children, and kept a butcher shop in the city of St. Louis, near plaintiff's green grocery store. They became acquainted and the defendant, to accommodate plaintiff, when he would go to market with his wagon, would bring supplies to plaintiff's store and after business hours, would occasionally call at her house to visit her. This continued for a few months and until, as plaintiff testified, they agreed to get married, and set the day for its consummation. Plaintiff testified that on the evening of April twenty-fourth, defendant called at her house and told her to be ready the following morning and he would call and they would go to the recorder's office and get the marriage license; that she did so and the defendant called and she got into his wagon and they drove down to the market;

that after they were at the market a short time defendant told her he had "no time now to get the license," and for to "get on the street car and go home," and she did so; that on the evening of the same day defendant came to her home and proposed to sleep with her; that she wanted to know about the license and he answered that it would "be all right," that he was "a man, not a boy," and from that time on they lived together as man and wife.

The following appears in plaintiff's cross-examination:

"Q. You knew you were not married? A. He said it was all right.

"Q. You had been married once before and you knew what it took to be married? A. Yes, sir.

"Q. You knew you could not be married without a certificate? A. He said he would put me down—

"Q. (Interrupting) You knew you were not married? A. Yes, sir.

"Q. And you let him come there and stay all night with you? Is that right? A. I told him he should go home to his house. I have to lock my store. I couldn't keep my store open.

"Q. You let him sleep there with you all night after he told you he didn't want to get married? A. He didn't say that. He said it was all right. I told him about the license.

"Q. Did you know a license was necessary? Answer my question 'Yes' or 'no.' A. I think a man is a man.

"Q. Did you know a license was necessary?

"Mr. Hartman: I object to that as having been answered before.

"The Court: Objection overruled.

"Q. Answer 'yes' or 'no.' Did you know a license was necessary—yes or no? A. I knew a license. He promised me one.

"Q. You knew a license was necessary before there

could be a legal marriage? A.   I was married to my first husband.

"Q.   You knew that a license was necessary?   A. Yes, sir.

"Q.   It is a long while getting it out of you, and you knew he had no license and yet you let him stay all night?   A.   He always promised me.

"The Court:   Promised you what?   A.   To get married.

"Q.   When did he promise you?   A.   He said he was a man and would stick to his word.   He said he was no boy.

"Q.   Did he promise you that the first night he slept with you?   A.   Yes, sir, he said a man was a man.

"Q.   And you would get married?   A.   Yes, sir.

"Q.   And you let him sleep with you notwithstanding you were not married?   Did you ever ask him afterwards to get married?   A.   Yes, sir.

"Q.   And he always refused?   A.   No, sir.

"Q.   He consented and you got married.   A. He said a woman should have nothing to say; a woman don't need any decent clothes and when he would be tired he would sell the property and go to Germany.   In January, 1890, he told me to go and get married and we would have a good time.

"Q.   And he always refused to marry you notwithstanding you have asked him all these years?   A.   He didn't refuse.

"Q.   He never got married to you?   A.   After he had me and I wasn't good enough for him any more he wanted a young woman."

The plaintiff showed by several witnesses that defendant introduced her to his acquaintances as his wife and spoke of the two children she had by him as his children.   The evidence is that they were reputed to be man and wife in the community where they resided.   It was also shown that at defendant's request the plaintiff signed and acknowledged three deeds conveying real estate

belonging to the defendant in the city of St. Louis. Plaintiff proved a good character, that she was an industrious woman, kept her children neat and clean and sent them to school while under her care.

Defendant denied that he ever agreed to marry plaintiff or that he ever agreed to go with her for a marriage license, and denied that he ever introduced her as his wife. He confessed to the cohabitation but, as did his ancient progenitor, old Adam, and all his weak deceitful unmanly sons have done since time begun, when called upon to answer for their sins committed against women, laid the blame to the seductive wiles of the woman. He testified that on April 25, 1900, plaintiff called him into her room after night, sat upon his lap and when he wanted to go home, locked the door on him and he (poor innocence) was confronted with the alternative of sleeping with her or sitting up all night, and that she persuaded him to go to bed with her. Ananias still lives, and we think only the testimony of the plaintiff and her witnesses should be looked to in order to ascertain whether or not a common law marriage was shown.

In Banks v. Galbraith, 149 Mo. 1. c. 536, 51 S. W. 105, following a number of previous Missouri decisions, it is said: "In this State marriage is a civil contract by one man and one woman competent to contract whereby they are mutually bound to each other so long as they both shall live, for the discharge, to each other and the community, of the duties and obligations which flow by law from such relation."

There is no ironclad rule of evidence by which a common-law marriage shall be shown but, like any other civil contract where there is no writing, it may be proven by facts and circumstances and the conduct of the parties, and when there is no direct evidence of the contract it may be inferred, if the testimony is such as to warrant the inference. From the evidence of the plaintiff that they had the day set to get married and that she, at defendant's request, on the morning of April 25, 1900,

drove down town with him for the purpose of getting marriage license, and that on the evening of the same day the defendant called at her house and, after assuring her that it was "all right," and saying he was "a man,—no boy," thereafter lived and cohabited with her and introduced her to his friends as his wife, we think the inference is fairly deducible that there was on said date a present contract of marriage. The presumption is against vice and in favor of innocence and good morals and on this ground the law presumes marriage where, as in this case, the evidence shows acknowledgment, cohabitation, the birth of children and reputation of marriage. [Cargile v. Wood, 63 Mo. 501; Adair v. Mette, 156 Mo. 1. c. 512, 57 S. W. 551; In re Imboden's Estate, 86 S. W. 263, 111 Mo. App. 220.] And this presumption cannot be overthrown except by the most cogent proof. [Hynes v. McDermott, 91 N. Y. 451.]

In Morris v. Davies, 5 Cl. & Finn. 163, it is said: "The presumption of marriage from cohabitation apparently not immoral, is one of the strongest presumptions known to the law. The law presumes morality, not immorality; marriage, not concubinage, legitimacy, not bastardy."

Great stress is laid by defendant's counsel upon the following excerpt from plaintiff's cross-examination:

"Q. You had been married once before and you knew what it took to be married? A. Yes, sir.

"Q. You knew you could not be married without a certificate? A. He said he would put me down—

"Q. (interrupting) You knew you were not married? A. Yes, sir.

Plaintiff was being plied with questions about her knowledge regarding the necessity of a marriage license and her marriage to her former husband, and her answers should be interpreted by the subject matter to which her attention was directed and what was then in her mind. So interpreted, the answer mean that she knew she was not married in pursuance of the statutory

law on the subject requiring a license. The answers do not, in our opinion, contradict or weaken her evidence in chief in the least.

We think there is sufficient evidence from which it may be fairly inferred that the plaintiff and defendant, on April 25, 1900, did mutually bind themselves to each other to live together as man and wife so long as they both should live, and affirm the judgment. All concur.