# THE STATE v. WILLIAM HARRIS, Appellant.

### Division Two, June 10, 1920.

1. **INFORMATION: Rape: Incest: Habitual Criminal.** The information set out in the statement, charging defendant (1) with the crime of breaking jail and escaping, (2) rape upon a child fourteen years of age and (3) incest with said child, is *held* sufficient to meet the requirements of the law.

2. **COMMON LAW WIFE: Witness.** Testimony that, after the death of defendant's wife, the witness lived in the same house with him as his wife for seven years, that she took his name and was everywhere introduced as his wife, that his daughters called her "mother" and testify that they were man and wife, makes a prima-facie case tending to show that she and defendant sustained the relation of husband and wife; and there being no testimony to controvert these facts, she is not competent to testify over his objection.

3. **AGE OF PROSECUTRIX: By Her Testimony.** In the prosecution of a defendant for statutory rape upon his daughter, whose mother is dead, that she was fourteen years of age at the time the offense was committed in September, 1917, being the best evidence obtainable, is competent, and is not destroyed by the testimony of her step-mother that, at the time of the trial in December, 1918, she was sixteen years of age, but is sufficient to authorize the jury to find that she was under the age of fifteen years when the crime was committed.

4. **RAPE: Intent: Other Offenses.** In the trial of a defendant charged with carnal knowledge of a child under the age of consent, the intent with which the offense is committed is wholly immaterial, and is no part of the offense, but the crime is established by showing that she was under the age of consent and that defendant had sexual intercourse with her; and no instruction should be given that evidence of other acts is competent only for the purpose of showing the intent with which defendant did the particular act. [Overruling State v. Belknap, 221 S. W. 39.]

5. ———: ———: **Evidence of Other Offenses.** Each act of sexual intercourse with a girl under the age of consent is a separate and independent crime, and in the trial of a defendant for a particular act no evidence of other acts, previous or subsequent, with her or with another girl, is competent, unless charged specifically in

separate counts of the indictment or information; and in no event is it proper to instruct that such other acts may be considered for the purpose of establishing the intent with which the particular act was committed.

*Held*, by WILLIAMS, P. J., dissenting, that evidence of prior acts of sexual intercourse between the same persons is admissible, not for the purpose of proving intent, but for the purpose of proving defendant guilty of the particular act with which he stands charged.

6. **OTHER CRIMES: Nature and Cause of Action: Must Be Charged in Information.** The constitutional provision that "in criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation" means that he is to be informed in the information or indictment of the accusation he is required to meet; and if other acts constituting separate and independent crimes, such as other acts of sexual intercourse with a girl under the age of consent, are not specifically charged in separate counts, they cannot be investigated or inquired into, for the intent with which they were committed forms no part of the offense. But if several of such acts are specifically charged in separate counts, testimony to sustain them may be offered, and the State can elect upon which one of them it will ask a conviction.

Appeal from Greene Criminal Court.—*Hon. Arch A. Johnson,* Judge.

REVERSED AND REMANDED.

*Val Mason* and *John H. Fairman* for appellant.

(1) The State wholly failed to prove the age of the prosecuting witness, Lucy Harris. State v. Houx, 109 Mo. 645; State v. Gully, 199 S. W. 124; State v. Ackley, 183 S. W. 289. This testimony was wholly incompetent because hearsay and it was not shown either (a) that declarant (the grandmother) was dead or that her testimony was otherwise unobtainable upon trial; (b) that declarant was even a member of the family; or (c) that the declarations were made *ante litem mortam.* State v. Bowman, 213 S. W. 64. (2) The court erred in admitting, over the objection and exception of the defendant, the testimony of Etta Harris, who was the legal

wife of the defendant. Cargile v. Wood, 63 Mo. 512; Imboden v. St. Louis Union Trust Co., 111 Mo. App. 220; Plattner v. Plattner, 116 Mo. App. 405; Davis v. Stouffer, 132 Mo. App. 555; State v. Evans, 138 Mo. 116. (3) The court erred in admitting incompetent testimony concerning other alleged crimes occurring subsequent to the one for which the defendant was charged and on trial. State v. Palmberg, 199 Mo. 233; People v. Clark, 33 Mich. 112. We have not found any law which would permit testimony of this kind for any purpose. Clearly it could not be used to prove the intent with which the defendant acted on the occasion which the defendant is charged and on trial in this case, as instructed by the court. Its only result would be to prejudice and inflame the jury against this defendant. (4) The court erred in giving the instruction telling the jury that other acts could be considered for the purpose of showing intent, This instruction is erroneous, because: (a) intent is not an element in the crime of rape where the act has been consummated; (b) evidence of prior acts is admissible only where they occur recently and before the act charged. State v. Scott, 172 Mo. 563. And then only where they tend to prove the particular act upon which the conviction is sought. State v. Palmberg, 199 Mo. 233; (c) intent cannot be shown by subsequent acts, nor would subsequent acts tend to prove an act previous thereto. State v. Palmberg, above; (d) evidence that the defendant had intercourse with Ruth Hunter, either prior or subsequent to the act charged in the information, would not tend to prove the act charged in the information, and its admission is reversible error. State v. Smith, 250 Mo. 274.

*Frank W. McAllister*, Attorney-General, and *H. P. Ragland* and *J. W. Broaddus*, Assistant Attorneys-General, for respondent.

(1) The information charging rape and incest, and that defendant had previously been convicted of breaking jail, is sufficient in form and substance to meet the

requirements of the statutes. Sec. 4471, R. S. 1909; Laws 1913, p. 218; Sec. 4725, R. S. 1909; Kelley's Crim. Law & Pract. sec. 935; Sec. 4381, R. S. 1909; State v. Oertel, 217 S. W. 66. (2) The verdict of the jury is based upon substantial evidence. (a) The first and second assignments in appellant's motion for a new trial are too indefinite. State v. Mann, 217 S. W. 69. (b) Where there is any substantial evidence upon which to base the verdict this court will not interfere as the weight of the evidence is for the jury. State v. Underwood, 263 Mo. 685; State v. Concelia, 250 Mo. 412; State v. Conley, 217 S. W. 30; State v. Reed, 237 Mo. 231. (3) It was not error to permit Etta Wheaton to testify, over the objections of appellant. Unlawful cohabitation as husband and wife is not within the prohibition of husband and wife testifying against each other. The appellant admitted upon direct examination that the reason he had been living with Etta Wheaton for seven or eight years was because he intended to marry her. 1 Greenleaf on Evidence (16 Ed.), sec. 339, p. 498; Bishop's New Crim. Procedure (2 Ed.), sec. 1154, p. 983; Rickerstricker v. State, 31 Ark. 209; State v. Johnson, 9 La. Ann. 308; State v. Brown, 28 La. Ann. 280. (4) The assignment that the court erred in permitting the testimony of Etta Harris, Lucy Harris and Josephine Harris as to other alleged acts of intercourse is not saved for review. It is true the State did introduce testimony tending to show that defendant had illicit relations with his other daughters, Josephine and Ruth. However, defendant cannot complain on this score as he did not object to the introduction of this testimony and proceeded to cross-examine the witnesses at length. State v. Levy, 262 Mo. 191.

RAILEY, C.—On December 11, 1918, the Prosecuting Attorney of Greene County, Missouri, filed, in the office of the clerk of the criminal court of said county, an information in two counts, charging defendant, William Harris, with the crimes of statutory rape, and incest. On December 13, 1918, appellant filed a demurrer to said in-

formation, which was overruled. On December 14, 1918, defendant was arraigned and entered a plea of not guilty as charged in the information. On December 14, 1918, the case was tried before a jury of Greene County aforesaid, and a verdict was returned in words and figures following, to-wit:

"We, the jury, find the defendant, William Harris guilty of rape as charged in the first count of the information and assess his punishment at imprisonment in the penitentiary for a term of ninety-nine years."

On December 17, 1918, defendant filed his motion for new trial and in arrest of judgment, which were respectively overruled on December 19, 1918. On said last named date, sentence was duly pronounced in accordance with the terms of the verdict aforesaid.

The State's evidence tends to show that the defendant in this case, William Harris, was forty-two years of age, and the father of three daughters, Ruth, Lucy and Josephine. The mother of these girls was deceased, and defendant had, for about seven or eight years, been living with one Etta Wheaton, who, under the name of Etta Harris, held herself out as his wife. She testified that she was everywhere introduced as such, and was referred to as "mother" by the children. On or about August, 1917, the defendant, Etta Wheaton, Lucy and Josephine moved to the farm of Luther Byrum, some three or four miles southeast of Springfield, in Greene County. On this farm, besides the dwelling house, was a large two-story barn. In the lower portion was kept, besides the stock, small grain, such as oats and corn. The upper portion, or loft, was used for the storing of hay. It was in this barn that defendant committed the acts, constituting the crime for the commission of which, he was charged and convicted. The daughters of defendant were accustomed to help him with his chores and were frequently with him in the barn. It was during one of these occasions that defendant had sexual intercourse with Lucy and Josephine. The latter testified on the witness stand that she was present at that time, and saw her father

have intercourse with Lucy. He had her lie down upon the hay, unbuttoned his trousers, raised her clothes, got on top of her and had connection with her. She testified further that after the act with Lucy, he then called to her to come and lie down on the hay, and with her he also had intercourse. Defendant gave Lucy ten cents and Josephine five cents, as the latter said, "for that." Josephine stated she saw defendant have intercourse with Lucy once after that, and, while she did not know how many times her father had had improper relations with Lucy, yet she knew he did so in the barn "quite a few times." Sometimes it would be upstairs and sometimes down. Josephine, according to her testimony, was thirteen years of age.

Etta Wheaton testified that she had been living with the defendant about seven years, during all of which time she held herself out to the public as his wife, and had lived with him until very recently, until the girls came and told her stories, against their father. That she last lived with defendant, in Plattsburg, Missouri and while they were residing there she saw defendant early one morning get into the bed with Lucy. They were both in their night clothes. She afterwards accused defendant of having had intercourse with his daughter, and shortly after that time he left Plattsburg. In July, she heard that her husband had married another woman, Alice Weaver. She then wrote to Miss Hull, the police matron of Springfield, stating in her letter that defendant had been having sexual intercourse with Lucy. She further testified that, after the marriage of defendant, she sent Lucy, who was then living with her, to Springfield to her father for him to take care of. That she also discovered her husband in the act of intercourse with another daughter, Ruth, in Patton Alley in the City of Springfield.

When Lucy was called to the stand she stated that she was born in Monteer, Shannon County, Missouri, and lived there until she was of the age of nine years. While living in Monteer, her father had intercourse with her. From Monteer, they moved to Springfield, and then to

the Byrum farm in that vicinity. Here again, she states, he had intercourse with her—how many times she does not know. Her story bears out that of Josephine in nearly every particular as to the acts of intercourse committed in the barn. Lucy testified that she was fourteen years of age.

On behalf of the defendant the evidence tended to show that he had been living with Etta Harris (Wheaton) for nearly seven or eight years, and that they were living together as husband and wife; that, while they were on the Byrum farm, he never did, at any time, have sexual or criminal relations with either Lucy or Josephine, nor did he in Plattsburg at any time have intercourse with Lucy; that at the time referred to by Etta Wheaton he had merely gone to Lucy's bed and kissed her, before starting to his work. In this, he is supported by Lucy, for she testified that it was not true.

Ruth Hunter, another daughter, testified that she never did, at any time, see any improper relationship between her father and Josephine or Lucy; that neither of her sisters had, at any time, made any complaint to her, or in her presence, relative to any mistreatment of them by her father; that it is not true, her father, at any time, ever had sexual intercourse with her.

Defendant maintains that this charge was instituted against him because of jealousy. Both Ruth and Lucy testified that at the time Etta Wheaton learned of his marriage, she was very angry. Ruth stated that Etta tried to get her to go to Springfield and swear out a warrant against her father; that upon her refusal to do so, Etta persuaded Lucy to do so.

Mrs. Weaver, who testified in behalf of defendant, stated that Lucy came to her house shortly before the trial, and stayed over night; that she stated to her that the charges made against the defendant, her father, by her (Lucy), were false; that Mrs. Wheaton had forced her under heavy threats, and she had been induced to make the charge by Mr. O'Day and Miss Hull. In her cross-examination, Lucy testified that she had told Mrs.

Weaver the charges against her father were false. She further testified that she wrote a letter to the prosecuting attorney. and told him she did not want to testify against her fath r, for the reason that the charges were false.

There is some evidence that Lucy was in the habit of frequenting streets and rooming houses with men; that her reputation in this connection was bad, and William McIlheny, deputy sheriff of Greene County, testified that when Lucy and Josephine attended school out near his place their reputation for telling the truth was not good.

Cash Lawhead, Clerk of the Circuit Court of Howell County, testified that Record Book "O" of said court, contained an entry showing that defendant had been convicted and sentenced to the penitentiary from Howell County for the breaking of jail. The defendant himself stated that he had been so convicted and served a term of two years in the penitentiary.

Such other facts as may be necessary will be considered in the opinion . The defendant, in due time, appealed the cause to this court.

I. The information, omitting caption and verification, reads as follows:

"Paul O'Day, Prosecuting Attorney within and for the County of Greene, in the State of Missouri, under his oath of office informs the court that William Harris, late of the county and state aforesaid, on the — day of September A. D. 1909, at the county of Howell and State of Missouri. was then and there convicted in the Circuit Court of Howell County. Missouri. of the crime of breaking jail and escaping and was sentenced to serve a term of two years in the penitentiary and was afterwards discharged upon compliance with his sentence, and thereafter on or about the — day of September, 1917. in the County of Greene in the State of Missouri, the said William Harris then and there upon one Lucy Harris, a female child under the age of fifteen years, to-wit, of the age of fourteen. years, unlawfully and feloniously did make an assault, and her, the said Lucy Harris, then and there unlawfully and feloniously did carnally know and

abuse, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State. And the said Paul O'Day, Prosecuting Attorney within and for the County of Greene, in the State of Missouri, under his oath of office further informs the court that William Harris, late of the county and state aforesaid, on the — day of September, A. D. 1909, at the County of Howell and State of Missouri, was then and there convicted in the Circuit Court of Howell County, Missouri, of the crime of breaking jail and escaping and was sentenced to serve a term of two years in the penitentiary and was afterwards discharged upon compliance with his sentence and thereafter on or about the — day of September, 1917, in the County of Greene in the State of Missouri, the said William Harris being then and there the father of one Lucy Harris, and the said William Harris and Lucy Harris being then and there persons within the degree of consanguinity, within which marriages are by law declared to be incestuous and void, to-wit, being then and there father and daughter, did then and there unlawfully, incestuously, knowingly, feloniously and willfully commit fornication with each other, by then and there having sexual intercourse together contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

I. The above information is sufficient to meet the requirements of the law. [Sec. 4471, R. S. 1909; Sec. 4725, R. S. 1909; Laws 1913, p. 218; Sec. 4381, R. S. 1909; State v. Oertel, 217 S. W. 66; Kelley's Crim. Law & Practice, sec. 935.]

II. It is contended by appellant, that "the court erred in admitting, over the objection and exception of the defendant, the testimony of Etta Harris, who was the legal wife of defendant."

**Common Law Wife.**

This assignment presents an important inquiry in the case, and can only be determined by the evidence before us. It appears from the record that Etta Wheaton (Har-

ris) had a case pending against her in the above court, wherein she was charged with the crime of living in adultery with defendant. She was offered as a witness by the State, and her counsel objected to her competency as a witness, because any testimony that she might give may tend to incriminate herself, and because she is the wife of defendant. Defendant likewise objected to her testifying as a witness in the case, because she is the common-law wife of defendant. This last objection was overruled, and an exception duly saved by defendant.

Upon examination by defendant's counsel, Etta Harris testified as follows:

"Q. You say you commenced to live with the defendant, William Harris, about seven years ago? A. Yes, sir.

"Q. And have lived with him all the time, until recently, as his wife, haven't you? A. Yes sir.

"Q. Been introduced as his wife? A. Everywhere.

"Q. Been known as his wife everywhere? A. Yes, sir."

On cross-examination she testified, substantially, as above quoted.

Josephine Harris, witness for the State, testified on this subject as follows:

"Q. Who lived there on the Byrum place? A. Who lived there with us?

"Q. Yes, what members of your family? A. My father and sister Lucy and my step-mother.

"Q. What is your step-mother's name? A. Etta Wheaton.

"Q. You say your step-mother, do you mean to say that William Harris, your father, and Etta Wheaton lived together as man and wife? A. They were man and wife.

"Q. That is your understanding? A. Yes, sir.

"Q. You mean to say you understand they were married? A. Yes, sir."

Defendant testified as follows:

"Q. I will ask you to state to the jury how long you lived with Etta Harris? A. Well, now I couldn't say positively, seven or eight years.

"Q. You lived in this town (Springfield) a good part of that time? A. Yes, sir.

"Q. During all that time you and Etta Harris were living together as husband and wife? A. Yes, sir; that was because I intended to marry her."

The testimony of Lucy Harris tends to corroborate that heretofore quoted, in regard to the alleged common-law marriage of defendant and Etta Harris.

There is nothing in the record tending to contradict the testimony heretofore quoted. Regardless of the law relating to marriages in other jurisdictions, we are satisfied from the foregoing testimony a prima-facie case was made tending to show that at the time of trial, defendant and Etta Harris sustained, as to each other, under the laws of this State, the relation of husband and wife. [Cargile v. Wood, 63 Mo. 501; Dyer v. Brannock, 66 Mo. 391, 400; State v. Gonce, 79 Mo. 600; State v. Cooper, 103 Mo. 266; Topper v. Perry, 197 Mo. 531; Bishop v. Brittain Inv. Co., 229 Mo. 1. c. 728-9, 730-1; Pope v. Mo. Pac. Ry. Co., 175 S. W. 1. c. 957; Rauch v. Metz, 212 S. W. 1. c. 362; Imboden v. Trust Co., 111 Mo. App. 234; Plattner v. Plattner, 116 Mo. App. 405; Davis v. Stouffer, 132 Mo. App. 555; 18 R. C. L. sec. 14, p. 393.]

Without any evidence in the record tending to controvert the facts relating to the common-law marriage aforesaid, we are of the opinion that the trial court committed error in permitting Etta Harris to testify as a witness in the case, over the objection of defendant. In a criminal prosecution against the husband, the wife cannot legally testify against him, over his objection. [Sec. 5242, R. S. 1909; State v. Evans, 138 Mo. 1. c. 125.]

III. It is strenuously insisted that the trial court committed error in submitting the cause to the jury, without the State proving that Lucy Harris, in September, 1917, was *under* the age of fifteen years.

Age of
Prosecutrix.

State v. Harris

Lucy Harris testified, without objection, that she was fourteen years of age. Her mother was dead, and the defendant failed to testify upon this subject. The State offered the best evidence obtainable. It is claimed the testimony of Mrs. Weaver discloses that Lucy Harris was sixteen years of age. This testimony was given at the trial in December, 1918. The information charges that the offense was committed in September, 1917. It was, therefore, a question for the jury as to whether Lucy Harris was under fifteen years of age in September, 1917, when the offense is alleged to have been committed.

IV. It is claimed that the trial court erred in permitting the State to show other acts of intercourse on

Other Acts.      the part of defendant, aside from that charged in the information. This testimony was not properly objected to by defendant, but in the instructions given by the court, and to the giving of which defendant objected at the time, the following appears:

"And in this connection you are further instructed that testimony of other acts of sexual intercourse by the defendant with Lucy Harris or Ruth Harris, are competent only for the purpose of showing the intent with which the defendant acted on the occasion on which the defendant is charged and on trial in this case."

That is to say, this instruction means, that the other acts of sexual intercourse are competent, for the purpose of fixing the *intent* with which the defendant had sexual intercourse with Lucy, as charged, in September, 1917. Now, if Lucy, at that time, was under fifteen years of age, the intent with which the act was done, is wholly immaterial, as the crime was committed, if the defendant had sexual intercourse with Lucy under such circumstances, regardless of his *intent*.

In the recent case of State v. Belknap, 221 S. W. 39, not officially reported, the following assignment of error was made: "The court erred in allowing the State to introduce evidence of many attacks, when the defendant could only be tried for one attack and one crime."

The author of this opinion, in passing upon the above assignment, said: "This contention is without merit. The evidence of the prosecutrix, in respect to this matter, was given without objection. In addition thereto, defendant had her testify, as to still other assaults of defendant, not referred to in chief."

The above quoted portion of the opinion is correct and we have no fault to find with same, but as a matter of *obiter dicta* we further observed: "These different assaults were admissible for, the purpose of showing an intent upon the part of defendant, even if an objection had been made. [State v. Miller, 263 Mo. l. c. 334, par. II; State v. Campbell, 210 Mo. l. c. 233; State v. Patrick, 107 Mo. l. c. 155.]"

Upon a careful re-consideration of the above question, we are *now* of the opinion, that the last quotation above mentioned does not properly declare the law under the statute where defendant is charged with statutory rape upon a female child under fifteen years of age. Under such circumstances, it is immaterial what motive may have induced the defendant to commit the act, or what his intention was in committing the same. If he had sexual intercourse with Lucy Harris in September, 1917, and she was under under fifteen years of age at the time, he was guilty of statutory rape without regard to the intent with which the act was done.

Other crimes of a similar nature are independent, for which defendant may be tried and convicted if pleaded in separate counts of information. They can have no bearing on the question, as to whether Lucy Harris was under fifteen years of age in August, 1917, nor as to whether defendant had sexual intercourse with her during said time. Hence, defendant's prior or subsequent acts of sexual intercourse, whether with Lucy Harris or any other female, on principle and common fairness, should not be the subject of inquiry before the jury, unless covered by a separate count in the information, in which the State is proceeding against him in respect to such charge, as an independent crime.

V.  Aside from the foregoing observations, and considered from a Constitutional viewpoint, the prior and subsequent acts of sexual intercourse heretofore referred to, ought not to be the subject of investigation, unless charged as separate and independent crimes, in separate counts of the information.

Information.

Section 12 of Article II of our Constitution, provides that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information, which shall be concurrent remedies," etc.  It is evident, that the framers of our Constitution contemplated that every man was presumed to be innocent of crime until proven guilty.  They contemplated that the courts should give the accused the benefit of this presumption, in prosecutions for crimes.  They did not contemplate that the State might charge defendant with the specific crime of statutory rape in August, 1917, and, proceeding by ambush, attempt to prove another independent crime of the same nature on the 1st day of January, 1918, having no connection with the one under consideration, which had never been pleaded in the information, and without any opportunity having been afforded the accused to meet said charge.  To our mind, it is plain, that the framers of said Section 12 intended, in cases like the one before us, that the State should set out in different counts of the information the separate, independent crimes sought to be investigated at the trial.

Section 22 of the same Article of our Constitution clearly recognizes the justice of this contention, for it is there said: "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation."  Does this mean, that he may be informed for the first time at the trial, as to the nature and accusation against him, in respect to these independent crimes not mentioned in the information?  Or, does it contemplate, that no inquiry can be had in respect to these independent crimes, which have no bearing on the case in question, unless the information so charges, by an appropriate count, in order that defendant, in the

orderly administration of justice, may be informed as to the charges which he will be called upon to meet?

We, therefore, conclude, that whether tested upon principle, or by the provisions of our Constitution, other similar acts of intercourse, aside from the one charged in the information, which tend to show statutory rape, should not be investigated at the trial, unless covered by the information in a separate count, as constituting a separate crime. No injustice can be done the State in construing the law as above indicated, for, if the prosecuting attorney is in possession of evidence tending to show prior and subsequent acts of a similar character, he can investigate the same at the trial under separate counts of the information, without being required to elect on which count he will proceed. By pursuing the latter course, the State guarantees to the accused a constitutional trial in the open, with knowledge of the nature and accusation presented against him.

VI. Pursuing the same subject still further, let us consider the concrete case presented here. The defendant is charged in the information with having committed the crime of statutory rape by having sexual intercourse with Lucy Harris, a female child under the age of fifteen years, in Greene County, Missouri. It was only necessary for the State to prove, at the trial, that defendant had sexual intercourse with Lucy Harris in Greene County, Missouri, at the time charged in the information, and that at said date she was under fifteen years of age. If defendant had sexual intercourse with Lucy Harris under said circumstances, he was guilty of statutory rape at that time, regardless of the motive or intent with which he committed the same; regardless of his past character, life and conduct, and regardless of his subsequent acts and conduct. Other acts of a similar character, either prior or subsequent to that charged in the information, are not admissible in evidence, according to our conception of the law, unless pleaded in separate

counts as independent crimes, and investigated accordingly.

The conclusions heretofore announced are sustained by well considered authorities, among which may be found the following: State v. Spray, 174 Mo. 569, and numerous cases cited; State v. Boatright, 182 Mo. l. c. 51; State v. Hyde, 234 Mo. l. c. 224-5; State v. Teeter, 239 Mo. 475; State v. Wellman, 253 Mo. 302; State v. Bersch, 276 Mo. l. c. 414-5-6, 207 S. W. 809; 8 R. C. L. sec. 194, p. 198. Authorities may be found to the contrary, but keeping in mind the provisions of our Constitution supra, and that crimes of the character charged here, speak for themselves, regardless of the motives or intent with which they are committed, they should not be followed in this kind of a case.

VII. We have considered all the questions necessary in the re-trial of the cause. On account of the errors heretofore pointed out, the cause is reversed and remanded for a new trial. *White, C.,* concurs, except as to paragraphs 4, 5, and 6; *Mozley, C.,* concurs.

Conclusion.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. *Walker* and *Williamson, JJ.,* concur; *Williams, P. J.,* concurs in paragraphs 1, 2, 3 and 7, but dissents as to the views expressed in paragraphs 4, 5 and 6, on the ground that evidence of prior acts of sexual intercourse between the same persons, is admissible, not for the purpose of proving intent, but for the purpose of proving defendant guilty of the crime with which he stands charged, under the rule announced in State v. Palmberg, 199 Mo. 233, l. c. 250.